(No. 57513.-

MATERIAL SERVICE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Lavonne Murray, Appellee).

*Opinion filed September 23, 1983.*

Gifford, Detuno & Gifford, Ltd., of Chicago (Thomas

W. Gifford, of counsel), for appellant.

Peter D. Corti, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Claimant, Lavonne Murray, sought workmen's compensation benefits from respondent, Material Service Corporation, for the death of her husband. The arbitrator found there was a causal connection between a work-related accident and her husband's death of a heart attack approximately three months later. He awarded the widow $1,750 in burial expenses and $272 per week as specified in section 7(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.7(a)). The Industrial Commission affirmed, and the circuit court of Cook County confirmed the arbitrator's decision. On appeal, respondent maintains the Commission's decision is against the manifest weight of the evidence.

Claimant's husband, Theodore Murray, was employed by respondent in 1948 and worked as a crane operator. He suffered from coronary artery disease, and in June of 1978 he was hospitalized for three days because of breathing difficulties and chest pains. His cardiologist, Dr. Mohammad Toor, prescribed medication to control his blood pressure and sent him home.

Shortly thereafter he returned to his job and worked steadily until February 20, 1979. At approximately 7:30 a.m. on that date, the boom of his crane smashed into the crane cabin and pinned him inside. Paramedics were called and extricated him from the cabin. They examined him, took his blood pressure, which was recorded at 152/82, and transported him to a nearby hospital emergency room. Examination there revealed he sustained a laceration above the right eyebrow, an injured right wrist, and multiple contusions to his right shoulder and the right side of his chest. He also complained of severe pain in his lower back.

On arrival at 8:10 a.m., his blood pressure was recorded at 140/76. At both 10 a.m. and 11 a.m. it was 170/100, but dropped to 130/80 by 2 p.m. At 10 a.m. the following morning, however, it was 180/80. Laboratory data revealed Murray had slightly increased enzyme levels. He informed the emergency room physician of his heart condition, and his blood pressure medications were continued.

Late that afternoon Murray was transferred to a hospital near his home and was treated by Dr. Toor. There, he complained to a nurse of having chest pains and he was given nitroglycerin to relieve it. Over the next two days his blood pressure fluctuated with readings as high as 166/86, 162/96 and 160/100. His antihypertensive medications were continued.

An X ray of his right wrist indicated it was fractured, and a cast was placed on it. He was also given whirlpool therapy for his back pain and ultrasound treatments to his lower dorsal spine for relief of muscle spasms. His condition improved, and he was discharged on March 7, 1979.

Murray continued to have back pain, however, and on March 23, 1979, he went to see Dr. Toor. The doctor found his blood pressure was high (160/86) and increased his blood pressure medication. He attributed the elevation to the persistent pain Murray was experiencing. On May 3, 1979, Murray again went to Dr. Toor complaining of pains in both sides of his chest. He scheduled a treadmill test for Murray to be conducted on May 10. However, on May 9, 1979, Murray suffered an acute myocardial infarction and died.

At the arbitration hearing, claimant testified her husband was in severe pain and perspired profusely when she saw him at the emergency room after his accident and that he continued to have pain thereafter. She said "he never appeared to be the same after the accident." His face was drawn; he was quiet; she had to help him out of the bathtub. Prior to the accident he had a good appetite,

but afterward it declined, causing him to lose weight. He endured sleepless nights because of his pain. While awake, he would move from one chair to another and then would walk around the house. She stated "[H]e was not my husband for those months."

Dr. Toor testified that, in his opinion, Murray's death was causally related to the industrial accident on February 20, 1979. He admitted Murray had severe coronary artery disease prior to that date. However, he said the pain and stress associated with Murray's injuries increased the secretion of stress hormones, which increase, according to his research, was a factor in precipitating a heart attack. He further testified Murray's chest trauma and pain masked symptoms of the impending myocardial infarction.

Respondent's physician testified the post-mortem examination showed Murray had an 80-90% occlusion of his coronary artery circulation. With this amount of disease, he exclaimed, "the wonder is not that he died, but rather that he lived." He stated coronary artery occlusion is not caused by trauma, but instead by the progression of the underlying disease. Moreover, he indicated there was nothing in the hospital records showing Murray sustained any cardiac injury as a result of the accident. He noted no EKG or treadmill tests were conducted at either hospital. In his opinion, there was no relationship between the accident in February and Murray's subsequent death.

On cross-examination, he said stress could be a precipitating factor in causing coronary thrombosis, but pain alone would not cause or precipitate a myocardial infarction. He disagreed with Dr. Toor as to the role hormonal secretions played in precipitating or aggravating coronary artery disease.

Respondent maintains the finding of causal connection in this case was based solely on an elevation in Murray's blood pressure. It contends that Murray's blood pressure

was found to be normal (140/76) after the trauma and that there is no evidence of any elevation in the hospital records. It further asserts there is no evidence in the record to establish the February 1979 accident adversely affected Murray's preexisting heart condition in any way.

"[W]hether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation of a preexisting condition, is a question of fact to be decided by the Industrial Commission. [Citations.] The claimant's injury need not be the sole factor that aggravates a preexisting condition, so long as it is a factor that contributes to the disability." (*Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 266-67.) Contrary to respondent's contentions, the Commission's finding of causal relationship in this case was not based solely on an elevated blood pressure. Rather, it also relied on Dr. Toor's opinion regarding the increased secretion of stress hormones and on the doctor's testimony that the chest contusions, back pain, stress, and other injuries adversely affected Murray and masked the heart attack symptoms.

It is the Commission's function "to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of conflicting medical views is to be accepted." (*Proctor Community Hospital v. Industrial Com.* (1969), 41 Ill. 2d 537, 541.) In the presence of conflicting medical opinion, the Commission's determination is given substantial deference and will be upheld unless it is contrary to the manifest weight of the evidence. *Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 267.

Dr. Toor opined there was a causal connection between the accident and Murray's death. He indicated it hastened his demise. Claimant testified that prior to the accident her husband worked steadily, but that he never returned to work thereafter. Her testimony regarding the changes

in her husband subsequent to his accident also supports the Commission's findings. We further note the record contains evidence Murray's blood pressure fluctuated after the trauma and was elevated on several occasions. From our review of the record, we find there was sufficient evidence from which the Commission could conclude the industrial accident aggravated Murray's heart condition and contributed as a causative factor in accelerating his death. Accordingly, its decision is not contrary to the manifest weight of the evidence and will not be disturbed.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*