OLD BEN COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Norma Jo Williams, Appellee).

Fifth District (Industrial Commission Division)   No. 5—85—0223WC

Opinion filed February 26, 1986.

Stevenson, Rusin & Friedman, Ltd. of Chicago (Douglas F. Stevenson, of counsel), for appellant.

Don R. Lucas & Associates, Ltd., of West Frankfort (Don R. Lucas, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, the widow of Donald L. Williams, filed an application for adjustment of her claim under the Workers' Compensation Act (Ill. Rev. Stat.1981, ch. 48, par. 138.1 *et seq.*), seeking to recover benefits for her husband's death resulting from a fire at work. An arbitrator found that there was a causal connection between decedent's work-related activity in fighting the fire and his subsequent heart attack and death, and awarded death benefits. On review, the Industrial Commission affirmed the decision of the arbitrator. The circuit court of Franklin County confirmed the decision of the Commission, and the employer, Old Ben Coal, appeals.

Decedent was employed by Old Ben Coal as a mine manager. At the time of his death on April 14, 1978, decedent was 45 years old and had not missed a day of work since he was first hired in 1950. Decedent appeared to be in good health and was described by his co-workers as an energetic worker.

Three occurrence witnesses testified on behalf of claimant: James D. LeVault, a co-worker; Coleman Jackson, assistant mine manager; and Dan Kellerman, supervisor. On April 14, 1978, at about 5:30 p.m., decedent and LeVault were working together in a mine shaft when an acetylene tank caught fire. Decedent attempted to put out the fire with fire extinguishers, but was unable to extinguish it and called for help. LeVault was unable to offer much assistance because he was on crutches due to a previous injury. There was dense, heavy smoke in the area. Decedent fought the fire alone for 30 minutes, running and carrying 20-pound dry chemical fire extinguishers and throwing rock dust on the fire. After Kellerman received decedent's report of the underground fire, he told Jackson, who ordered the mine to be evacuated. Kellerman and Jackson arrived on the scene about 30 minutes after the report of the fire. The fire was eventually extinguished by capping the acetylene tank. Jackson called the fire department because he was concerned that the tank would explode.

Each of the witnesses testified that decedent looked exhausted from fighting the fire. He was sweating, breathing hard, his skin was pale, and he "plopped down" on a bench immediately after the fire had been extinguished. Two mine superintendents arrived shortly thereafter. After observing decedent, one superintendent ordered decedent taken to the hospital. On the way to the hospital, decedent complained of chest pains and the emergency flashers were turned on.

Still complaining of chest pains, decedent was seen by Dr. Fox in the hospital emergency room at about 7 p.m. Dr. Fox observed that decedent was sweating and his skin was cool and clammy. Dr. Fox

thought that decedent might be suffering a myocardial infarction (heart attack) and ordered a chest film and electrocardiogram. The chest film was normal while the electrocardiogram showed obvious T-wave abnormalities. Decedent's blood pressure and pulse were normal. At about 7:20 p.m. decedent called his wife. While decedent was being admitted to the hospital, he collapsed suddenly with a grand mal seizure and died about 8 p.m., approximately 2½ hours after starting to fight the fire.

An autopsy revealed that the cause of death was "acute heart failure, secondary to acute thrombosis of the right coronary artery." The autopsy report stated that decedent had arteriosclerotic heart disease. Additionally, the autopsy specifically found that the right artery was obstructed by a fresh thrombosis (blood clot) with no accompanying infarct (scarring). At the time of his death, decedent was 5 feet 8½ inches tall and weighed abut 250 pounds. His heart was enlarged to almost twice its normal weight.

At the arbitration proceeding, Dr. G. Charles Oliver, a cardiologist, testified for claimant by means of an evidence deposition. Dr. Oliver stated that there was a clear causal connection between the physical and mental stress experienced by decedent in fighting the fire and the fresh coronary thrombosis resulting in his death a few hours later. Dr. Oliver supported his opinion with medical studies showing that vigorous and unusual exertion could lead to fatal heart attacks, especially for people with arteriosclerosis. Dr. Oliver described myocardial infarction as death of heart tissue which requires a number of hours after the reduction in blood supply before it can be detected by a pathologist. Dr. Oliver suggested that decedent suffered a myocardial infarction, resulting from an extreme degree of activity, or a fatal arrythmia.

Dr. Herman K. Hellerstein, an internist and cardiologist, testified for the employer by means of an evidence deposition. Dr. Hellerstein stated that unusual physical exertion or emotional stress is associated with cardiac arrest resulting from dysrhythmia or infarction, not thrombosis. It was his opinion that decedent's involvement in fighting the fire and his death were not causally related. Decedent's EKG showed no dysrhythmia. Dr. Hellerstein also stated that decedent's activity in fighting the fire was not unusual and stressful for a man who worked over 25 years in the mine. Citing recent studies, Dr. Hellerstein explained that coronary thrombosis is characteristic of the natural progression of severe arteriosclerosis and that stress did not contribute to the development of the thrombosis. Hellerstein testified, however, that the autopsy report showed decedent's thrombosis devel-

oped a few hours before his death.

The arbitrator found that the physical exertion and activity in which decedent was engaged in fighting the fire was a causative factor in the development of his coronary thrombosis and resulting death. On review, the employer requested the Commission to appoint an impartial physician, pursuant to section 19(c) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(c)). Stating that it had no authority to do so, the Commission denied the request.

On review, the employer also offered the evidence deposition testimony of Dr. Joseph B. Messer, a cardiologist. Dr. Messer stated that the cause of decedent's cardiac arrest was lack of blood and nutrient supply to his heart due to the blood clot in his right coronary artery. It was his opinion that the cause of death was not related to decedent's activity at work. Decedent's acute arteriosclerosis precipitating the thrombosis would have caused his death at that time, regardless of the fire and attendant circumstances. According to Dr. Messer, physical or emotional stress does not cause coronary thrombosis. In an individual with acute coronary arteriosclerosis such as decedent, it was within the natural progression of the disease for a thrombosis to develop and obstruct the narrowed coronary artery, resulting in a cessation of nutrient supply or infarction, ultimately causing fatal arrythmia or cardiac arrest. In the opinion of some experts, this progression is affected by stress. However, stress would not cause the sudden development of a thrombosis. Dr. Messer indicated that decedent's EKG showed irregularities in the supply of nutrients to the heart.

On review, claimant offered the evidence deposition of Dr. Gerald A. Wolff, a cardiologist. He opined that there was a direct causal connection between the physical exertion and emotional stress involved in the work of putting out the fire and decedent's death. In an individual with severe coronary artery disease such as decedent, exertion and stress would be sufficient to induce changes in the coronary arteries and the clotting capabilities of his blood, leading to formation of blood clots, myocardial infarction, and possibly death. Noting that some studies correlate sudden stress with cardiac dysrythmia or myocardial infarction, Dr. Wolff stated that thrombosis (blood clots) cause myocardial infarction (death of tissue). He believed that thrombosis was part of the diagnosis of myocardial infarction reported in the medical studies. Dr. Wolff also stated that mental and physical stress caused thrombosis, which could result in death. Although decedent's autopsy report showed a fresh thrombosis, and no myocardial infarction, Dr. Wolff stated that in cases of sudden death, it was not unusual for a myocardial infarction not to appear in the pathological findings. The

heart attack was not advanced enough before death to cause visible tissue damage. Dr. Wolff stated that a thrombosis would not appear on an EKG.

Claimant also submitted the Federal inspectors' investigation report of the underground coal mine acetylene tank fire in question which concluded: "It is most likely that the activity of the victim, in combatting the mine fire, contributed directly to the fatal heart attack."

The Commission affirmed the decision of the arbitrator, finding that the additional evidence did not change the ruling. The trial court confirmed the Commission's decision.

The employer contends that there was no causal relationship between decedent's activities in fighting the fire and his death several hours later from acute coronary thrombosis and a grand mal seizure. It asserts that stress would not precipitate death from a coronary thrombosis, maintaining that decedent's death was merely the result of the natural progression of his coronary arteriosclerosis. The employer further argues that the Commission erred in not appointing an impartial medical examiner.

■■ It is the Commission's function to decide disputed questions of fact, including those of causation, and to resolve conflicting medical opinions. (*Material Service Corp. v. Industrial Com.* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) The Commission's findings will be upheld unless they are contrary to the manifest weight of the evidence. (*Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 85 Ill. 2d 172, 421 N.E.2d 909.) Moreover, a preexisting heart condition does not render an award of compensation against the manifest weight of the evidence where the Commission may have legitimately inferred from the evidence that the employee's occupational activity was a causative factor in the death. *Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 402 N.E.2d 231; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 362 N.E.2d 339.

In the present case, decedent first manifested cardiac symptoms after strenuous, unusual exertion for 30 minutes in fighting the fire at work. From all the occurrence testimony, the danger caused by the fire and possible imminent explosion created an emergency situation in the underground coal mine, requiring its evacuation. Although the autopsy report revealed the presence of arteriosclerosis, decedent manifested symptoms of heart disease until after the period of work-related stress. We reject the employer's contention that the cause of death was a grand mal seizure. That term was only used by Dr. Fox, the emergency room physician, in his report to the employer to ex-

plain decedent's condition at the moment of his death, a seizure due to lack of oxygen. The autopsy conclusively revealed the cause of death as coronary thrombosis, obviously precipitating the lack of oxygen.

We further reject the employer's contention that any exertion on the part of decedent was an overexertion, due to his degenerative heart disease. Claimant and decedent's co-workers testified that he participated in normal activities and was an outstanding worker until moments after fighting the fire, when he sat down, exhausted and pale. There was no indication that decedent suffered from any illness until after his death when the arteriosclerosis was found. The employer maintains that decedent did not have an immediate change of condition after this event in the mine because his blood pressure and pulse were normal upon entering the hospital and his EKG showed only a slight abnormality. The employer further asserts that even if the event was stressful, decedent's overexertion would not cause a coronary thrombosis, only a myocardial infarction.

■ Although decedent's pulse and blood pressure were normal upon entering the hospital, Dr. Fox examined decedent and believed that he was suffering a myocardial infarction. All the expert witnesses testified that an individual could be suffering from a coronary thrombosis without abnormalities showing on the EKG. Additionally, according to the testimony of Dr. Hellerstein, an expert witness offered by the employer, the autopsy demonstrated a fresh coronary thrombosis, obstructing the right artery, which had developed from two to four hours before his death. Furthermore, the Commission was entitled to accept the testimony of Dr. Oliver and Dr. Wolff that unusual exertion and stress can cause a coronary thrombosis and that decedent may have also suffered a myocardial infarction which did not appear on the autopsy report. (See *Material Service Corp. v. Industrial Com.* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) Our review of the record does not persuade us that Dr. Oliver and Dr. Wolff rendered an opinion on causal relationship based on the erroneous belief that decedent died of an infarction. Therefore, the Commission's finding of causal connection between the activity of decedent in fighting the fire and his resultant thrombosis and death is not contrary to the manifest weight of the evidence.

■ With respect to the employer's argument that the Commission erred in not appointing an independent medical examiner, the statute states: "[T]he Commission may on its own motion order an impartial physical or mental examination of a petitioner whose mental or physical condition is in issue, when in the Commission's discretion

it appears that such an examination will materially aid in the just determination of the case." (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(c).) This provision refers to an examination of a petitioner whose condition is at issue and does not apply to death cases where the issue is causation. In cases involving heart attacks the resolution of conflicting medical testimony relating to causal connection is a decision for the Commission. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 370 N.E.2d 520; *Johns-Manville Corp. v. Industrial Com.* (1977), 60 Ill. 2d 221, 326 N.E.2d 389.) Accordingly, the Commission properly denied the employer's request for an impartial medical examination.

For the reasons stated, the judgment of the circuit court of Franklin County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.