NORTHERN ILLINOIS GAS COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Carole Corirossi *et al.*, Appellees).

Second District (Industrial Commission Division)    No. 2—86—0030WC

Opinion filed September 24, 1986.

Julie Ann Garrison and Robert H. Joyce, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Frank A. Perrecone, of Lawrence J. Ferolie & Associates, Inc., of Rockford, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioners Carole Corirossi and Mitchell Corirossi, a minor, filed an application for adjustment of claim with the Industrial Commission to recover for the death of Anthony Corirossi, their husband and father, who died of a heart attack and who had been employed by respondent Northern Illinois Gas Company. An arbitrator awarded compensation, the commission affirmed that decision, and the circuit court of Winnebago County confirmed the Commission's decision. Respondent appeals, contending that the Commission's finding that decedent's death arose out of and in the course of employment is against the

manifest weight of the evidence, and that the Commission erred in rejecting additional evidence on review.

Decedent was 48 years old and had been employed by respondent for 26 years. On August 26, 1981, decedent, a crew leader, reported to work at 7 a.m. His supervisor, William Denham, testified at the arbitration hearing that decedent complained of a pain in his chest, but preferred to go out with the crew to the job. Ernie Heuer, the construction department manager, also testified that decedent complained of not feeling well, but wished to remain at work. Decedent left for the work site in Rockford with his two crew members, Enrique Ramos and Burt Anderson.

Ramos testified that he and decedent began digging a 2-foot deep hole in the ground in order to locate an underground pipe for the natural-gas service. The ground was "very, very hard" because there were a lot of trees, which prevented the rain from soaking into the ground. They dug with a shovel and a spade, working continuously for over one hour, each man taking alternate shovelfuls.

After completing this task, the men proceeded to use a "whirly rod" to insert a plastic pipe into the existing gas pipe. The end of the rod had a steel hook, used to guide the 20-foot long pipes from the street to the property line of the house. The rod had to be kept in position so it would go straight towards the house and not move up or down. This required decedent to apply pressure by either putting weight on the rod or lifting up on the rod. After completing the shoveling and the 10 minute operation with the whirly rod, decedent told Ramos that he did not feel well. Decedent and Ramos drove to another location to look at an above-ground pipe, a 20-minute round trip. Denham arrived at the job site and, after a coffee break and a meeting, drove decedent to a hospital emergency room.

Decedent was admitted to the hospital and was later diagnosed as having an acute myocardial infarction. He was discharged on September 21, 1981, and enrolled in a cardiac out-patient rehabilitation program. He did not return to work. On November 22, 1981, decedent was readmitted to the hospital where on the next day he underwent a catheterization and angiography. Later that day he went into ventricular fibrillation and died.

On June 28, 1982, petitioners took the evidence deposition of Dr. Nathaniel D. Greenberg, a specialist in internal medicine who had reviewed decedent's medical records. In response to a hypothetical question, Dr. Greenberg stated that, in his opinion, the work activities precipitated the myocardial infarction. The employee was "performing heavy physical labor when he became acutely ill with chest pain and

was hospitalized promptly thereafter. The studies indicated that he had sustained a myocardial infarction." Dr. Greenberg explained that a myocardial infarction is the death of heart muscle tissue caused by an inadequate blood supply, and that the heart muscle's need for blood is directly related to the work the heart is required to perform. Dr. Greenberg described the work of shoveling as clearly a heavy enough burden to create a marked discrepancy between the need of the heart for blood and the ability of the coronary artery to supply blood.

Dr. Greenberg also explained that the purpose of administering catheterization is to learn the exact nature of the heart disease to determine whether bypass surgery is indicated. He concluded that there was a direct connection between the work activities described and decedent's death. "There never would have been any reason to perform a cardiac catherization [sic] in this individual if he had not sustained the myocardial infarction in the first place; *** therefore, the catherization [sic] is a consequence of the work activity and any complications thereof, such as *** death, would be a direct consequence of the work activity."

Dr. Greenberg's medical report, dated July 7, 1982, was introduced into evidence at the arbitration hearing. The report recited that decedent's initial EKG in the emergency room on August 26, 1981, was normal, but that he was admitted as a precaution and the subsequent EKG and blood enzyme studies showed an unequivocal acute myocardial infarction. The cardiac catheterization confirmed this diagnosis. The autopsy revealed the old anteroseptal wall myocardial infarction; occlusion of the left anterior descending coronary artery; plaque with perivascular hemorrhaging in the right circumflex coronary artery; and atherosclerotic disease of the abdominal aorta. The report noted that decedent had a history of hypertension, but that he was free of cardiac problems prior to August 1981.

Dr. Joseph A. Valaitis, a cardiologist and decedent's treating physician, prepared a report dated January 12, 1982, which was also introduced into evidence. The report generally concurred with the medical information contained in Dr. Greenberg's report. It added that decedent had experienced severe aching in the lower portion of his anterior chest on August 25 while he was welding. He had some discomfort during the night. The next day, the pain increased, requiring hospitalization. His blood pressure was 180/120 and later rose to 220/112. Since the emergency-room EKG was normal, it was Dr. Valaitis' opinion that decedent did not have his myocardial infarction on August 25. Instead, he was on the verge of having a heart attack. "With the increasing pain the patient was experiencing prior to his hospital-

ization on the morning of August 26, it was more likely due to the fact that the patient went from a preinfarctional state, or an impending myocardial infarction, to an outright heart attack or myocardial infarction." Dr. Valaitis concluded that the work activities of August 26 could have precipitated the myocardial infarction by causing him to go from a preinfarctional state to an outright infarction. Decedent's hospital records include a statement by Dr. Valaitis that decedent was advised to have a catheterization and angiography because of his young age and concerns about his return to work. The EKG report dated August 26 and signed by Dr. Valaitis states: "Tracings compatible with the beginnings of an acute anterior and lateral wall myocardial infarction." The EKG reports dated August 27 and 28 indicate "myocardial infarction."

Petitioner Carole Corirossi testified before the arbitrator that decedent did not complain of being ill on August 25. He was upset with a problem about the car, but "not unduly so." Decedent was in a great deal of pain in the emergency room on August 26. Petitioner testified that after his discharge decedent did no physical labor. His daily pattern was to wake up, eat, sit and nap. Decedent had been treated for hypertension prior to August 1981.

On January 28, 1983, the arbitrator awarded petitioners $334.60 per week until $250,000 was paid or 20 years had passed, whichever was greater. The arbitrator found that decedent had sustained accidental injuries which arose out of and in the course of his employment by respondent. The arbitrator also found no material defect in the hypothetical question posed to Dr. Greenberg.

In June 1983 petitioners unsuccessfully moved to quash the evidence deposition of Dr. William Brice Buckingham. The deposition was taken on September 13, 1983. On September 22, before a Commissioner, petitioners objected to respondent's offer of the Dr. Buckingham deposition into evidence. Respondent's counsel stated, "It was not until after the arbitrator's award that I made a lawyer's decision that I would need now additional testimony on behalf of my client in this case ***." He also stated that, "Technically [the evidence] was available before, but it was my legal decision after reviewing the transcript and seeing what was put in the transcript that it was necessary to seek *** medical testimony." The Commissioner found that the evidence could have been made available at the time of arbitration, and that respondent had not asked the arbitrator for a continuance to bring in the evidence. The Commissioner did allow respondent to make an offer of proof that if Dr. Buckingham were allowed to testify he would state that no causal connection existed between decedent's

activities at work, the subsequent symptomatology and death.

On May 9, 1985, the Commission affirmed the arbitrator's decision. It also found that the Commissioner had properly rejected respondent's additional evidence on the ground that respondent failed to show good cause for failing to introduce the deposition at arbitration. The Commission further held that the hypothetical question presented to Dr. Greenberg was not materially defective.

■ Whether an injury arises out of and in the course of employment is a question of fact. (*Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 362 N.E.2d 339.) It is the function of the Commission to determine the facts and draw reasonable inferences from competent evidence. (*City of Chicago v. Industrial Com.* (1970), 45 Ill. 2d 350, 259 N.E.2d 5.) A reviewing court will not disturb the Commission's findings unless they are contrary to the manifest weight of the evidence. (*Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 362 N.E.2d 339.) In order for a heart attack to be compensable, petitioner must prove that some act of employment was a causative factor, but it need not be the sole, or even a principal, causative factor. (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 402 N.E.2d 231; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 185 N.E.2d 877.) When employment activities create a higher than normal degree of stress which contributes to the employee's death, the necessary causation is established. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 370 N.E.2d 520.) The fact that decedent's last heart attack did not occur while performing work-related duties does not preclude a finding that the employment was a causative factor in the death. (*Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 402 N.E.2d 231; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 362 N.E.2d 339.) Additionally, a preexisting heart condition does not preclude the Commission's finding that the heart attack is compensable. *Sears, Roebuck & Co. v. Industrial Com.* (1980), 79 Ill. 2d 59, 402 N.E.2d 231.

Decedent's continuous shoveling of alternate shovelfuls of "very, very hard" ground for over an hour and operation of the whirly rod demanded more strenuous physical exertion than that required in normal daily activities. (See *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 399 N.E.2d 606.) Dr. Greenberg testified that the heavy physical labor placed additional demands for blood on the heart muscle, creating a marked discrepancy between the heart's need for blood and the coronary artery's ability to supply that blood. Dr. Greenberg found a direct causal connection between the work

activities, the heart attack, the cardiac catheterization, and the resulting death. Dr. Valaitis' report indicated that decedent was in a preinfarctional state on August 25, which persisted until the next day at work when the pain increased, necessitating hospitalization. Dr. Valaitis concluded that the work activity could have caused decedent to go from the preinfarctional state to an outright myocardial infarction.

■ After one month in the hospital, decedent continued on cardiac drug therapy at home and participated in a rehabilitation program. He was weak and could engage in little activity. Dr. Valaitis advised him to undergo a cardiac catheterization and angiography to determine if surgery was indicated. The Commission found that the causal relationship between the work activities, heart attack, catheterization, and death was such that decedent's death arose out of and in the course of his employment. In the face of the evidence presented, we find that the Commission's decision was clearly not against the manifest weight of the evidence.

Respondent's contention that the work activities did not worsen decedent's condition is not persuasive. While he was not feeling well on August 25 and prior to work on August 26, decedent's condition after performing physical labor on the morning of August 26 required treatment in the emergency room and hospitalization in the intensive-care unit. Additionally, the second EKG done on August 26 shows the beginning of myocardial infarction.

We also reject respondent's argument that petitioners failed to prove the work was causally connected to the subsequent death three months later. The fact that the catheterization was elective and for evaluation purposes does not alter our holding. The medical testimony clearly establishes that, if it were not for the initial work-related heart attack, the subsequent procedures would not have been necessary.

■ Respondent further contends that the hypothetical question presented to Dr. Greenberg contained misstatements or facts not in evidence. These included facts that decedent did not smoke or drink; that decedent's father and brother died of heart attacks; and that decedent experienced chest discomfort while working on August 25. The latter fact was clearly included in the hypothetical question and the addition of the other two facts would not alter the causal relationship between the work activities and death. Respondent also points to other omissions in the hypothetical question, including decedent's complaints of feeling ill prior to work on August 26; co-workers' testimony showing decedent's work made no particular demand on him; absence of any immediate effect on decedent; the period of inactivity

before going to the emergency room; and his anxiety about his car on August 25. We agree with the Commission that the hypothetical question was not materially defective and that any omission was not prejudicial. (See *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 316 N.E.2d 93.) Moreover, Dr. Greenberg had some of the information available to him in decedent's medical records.

■ Respondent finally contends that the Commission erred in rejecting the evidence deposition of Dr. Buckingham as additional evidence on review. Industrial Commission Rule 4—(4)(B)(3) permits additional evidence on review if it was not introduced at the arbitration hearing for good cause. Furthermore, whether additional evidence should be heard by the Commission is a question within its sound discretion. (*Interlake Steel, Inc. v. Industrial Com.* (1985), 130 Ill. App. 3d 269, 474 N.E.2d 402.) Here, the only reason offered by respondent is that, upon reviewing the arbitrator's decision and the transcript, its counsel made a "lawyer's decision" that it would be wise to present medical testimony to support respondent's position. Counsel conceded that "technically" the evidence was available at the time of arbitration. Dr. Greenberg presented strong testimony at his deposition, and that deposition was taken five months before the arbitration hearing. In addition, respondent had access to decedent's medical records and clearly should have been aware of any need to rebut petitioners' medical testimony long before arbitration. Respondent chose its particular trial strategy before the arbitrator, evidently believing petitioners' proof was insufficient for them to prevail. A party cannot choose one trial strategy and then, faced with an adverse decision, supply additional evidence on review, absent, for example, the need to prevent injustice by correcting the arbitrator's misunderstanding of the evidence, or other good cause. Respondent has failed to present good cause, and thus we find no abuse of discretion by the Commission.

Respondent's reliance on *Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 312 N.E.2d 593, and *Walden v. Industrial Com.* (1983), 93 Ill. 2d 527, 445 N.E.2d 326, to support its argument that the Commission should have allowed it to present additional evidence, is misplaced. In *Wirth*, the court did not reach the issue of whether the Commission's discretion in allowing additional evidence had been abused because it found the Commission's decision to set aside the arbitrator's award was against the manifest weight of the evidence. In *Walden*, the employer did not know of the employee's visits to certain doctors until the arbitration hearing. Here, respondent was aware of the medical testimony petitioners would present long before the arbitration hearing.

■ We reject petitioners' contention that the circuit court was without authority to hear the matter because respondent failed to file a request for summons pursuant to section 19(f)(1) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(f)(1)). Petitioners failed to raise this objection in the circuit court, and thus they have waived the issue. See *Malone v. Industrial Com.* (1986), 141 Ill. App. 3d 116, 489 N.E.2d 1167; *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 396 N.E.2d 617.

For the foregoing reasons, the judgment of the circuit court of Winnebago County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.