VESCO VENTILATION & EQUIPMENT SALES, Appellant, v. THE INDUSTRIAL COMMISSION (Dolores Burda, Appellee).

First District (Industrial Commission Division)   No. 1—87—1717WC

Opinion filed April 13, 1988.

Gifford, Detuno & Gifford, Ltd., of Chicago (Thomas W. Gifford, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Todd L. Shivers and Daniel P. Socha, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Petitioner Dolores Burda sought worker's compensation and occupational disease benefits after suffering several episodes of myocardial infarction and congestive heart failure while employed by respondent Vesco Ventilation & Equipment Sales. An arbitrator denied benefits after finding that petitioner failed to prove she sustained an accident or disablement arising out of and in the course of her employment. The Industrial Commission affirmed the arbitrator's decision.

The circuit court of Cook County reversed the Commission's decision, finding the Commission erred in hearing additional expert medical evidence from respondent on review. The court found that without that evidence, respondent failed to rebut the occurrence facts and medical conclusions established by petitioner's witnesses; consequently, petitioner's evidence permitted only one inference and causation was established as a matter of law. The court found further that, even if it considered the additional expert testimony offered by respondent, it would still find the evidence insufficient and would conclude that the decision was against the manifest weight of the evidence. The court vacated the Commission's decision and remanded for an evaluation of the claim and an appropriate award. Respondent ap-

pealed to this court, which entered an order finding that the Commission had jurisdiction to hear the matter. On remand, the Commission entered its decision, which found petitioner was totally and permanently disabled and entitled to $105,470.34 in medical expenses. On judicial review, the circuit court entered an order affirming the Commission's decision on remand. Respondent appeals, contending that the trial court erred in reversing the Commission's original decision which awarded no benefits.

Petitioner worked as an office manager for respondent for 20 years. She supervised personnel and performed numerous other functions. In May 1980, petitioner was examined at Mayo Clinic for complaints of left-arm pain. The findings were negative. On July 7, 1980, petitioner again experienced pain and discomfort in her left arm, and it kept her awake during the night. On July 8, 1980, petitioner went to work, where she had been calculating the salesmen's quarterly commissions. This work included carrying ledger books. Petitioner testified that she was under pressure from the salesmen to finish the task as soon as possible, although the checks were not actually due until July 15. During the morning at work, petitioner became ill, experiencing gripping pain in her chest. She was taken to the hospital, where a diagnosis of myocardial infarction was subsequently made.

On August 25, 1980, petitioner returned to work part time with her doctor's approval. On August 29, 1980, petitioner felt tired at work. Later, at home, she experienced difficulty breathing and was taken to the hospital. Congestive heart failure was diagnosed. On September 17, 1980, petitioner returned to work part time, once again with her doctor's approval. On September 19, 1980, petitioner was again admitted to the hospital with a diagnosis of congestive heart failure.

Petitioner has not worked since September 1980. She has experienced several additional cardiac incidents, has undergone extensive surgical and diagnostic procedures and multiple hospitalizations. Respondent does not dispute that petitioner is totally and permanently disabled, and respondent stipulates that the medical expenses were reasonable and necessary.

William W. Quitmeier, petitioner's superior, testified as to petitioner's work duties and characterized her as a workaholic and perfectionist. While she was sometimes pressured by the salesmen to compute and distribute their quarterly commissions, causing her to work overtime, Quitmeier did not remember any details about the second quarter of 1980. He did recall that petitioner worked no overtime during the week prior to her July 1980 heart attack. Ms. Konter, a co-

worker, testified that petitioner's job was demanding. The salesmen were often hostile to petitioner at the end of a quarter.

Dr. James R. Dan, an internist and petitioner's treating physician, testified on behalf of petitioner that her work "could or might have played a role in her [cardiac] event." He stated further that her condition of arteriosclerosis had progressed far enough such that she could have suffered a heart attack even in her sleep. Any exertion was potentially harmful. The myocardial infarction could have occurred before she went to work on July 8, 1980. While a January 1982 angioplasty was performed to relieve arm pain caused by arteriosclerosis, he did not know whether the July 7, 1980, arm pain was caused by the blocking of that artery or by her premyocardial infarction state.

Dr. Louis Stephen McKeever, a cardiologist who treated petitioner, testified in an evidence deposition that petitioner's work "may have been causally related" to the July 8, 1980, myocardial infarction. Dr. McKeever stated further that petitioner's arteriosclerosis is a progressive disease which was not caused by work. If in fact petitioner suffered pain for 12 hours prior to her admission to the hospital on July 8, 1980, he would think that the infarction had already begun before she went to work on July 8. She could have had a heart attack at rest, and it would be speculative to say what might have caused the myocardial infarction.

On review, petitioner testified further as to her present condition.

A commissioner received the deposition of Dr. William D. Barnhart, who testified for respondent on November 21, 1983, that he had examined petitioner on April 5, 1983. He believed that the myocardial infarction was not caused by her work activity. In his opinion, the severity of her disease had progressed to a point where the myocardial infarction would have occurred regardless of the activities in which petitioner had engaged. Carrying ledgers at work was probably not the cause of the infarction, because the process was going to occur regardless, but such activity could cause an infarction if it was an unusual amount of work.

Respondent first contends that the trial court erred in finding that the Commission could not consider Dr. Barnhart's testimony. In the initial hearing on review, Commissioner Miller allowed Dr. Barnhart's deposition transcript into the record as an offer of proof in regard to anything but petitioner's present condition. The Commission made no rulings of record, but considered Dr. Barnhart's testimony regarding causation. Dr. Barnhart opined that the myocardial infarction was not caused by petitioner's work activity because the disease had progressed to such a severe degree that a heart attack could oc-

cur regardless of the level of petitioner's activity. The trial court held that respondent failed to show good cause for its failure to introduce medical evidence on causation before the arbitrator.

■ Section 19(e) of the Workers' Compensation Act provides that on review "[a]dditional evidence may be adduced where such evidence (1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearin, or (3) was, for good cause, not introduced at the arbitration hearing." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

■ The jurisdiction of the Commission is original, and generally, whether or not additional evidence should be heard is a question within the sound discretion of the Commission. (*Werries v. Industrial Comm'n* (1986), 114 Ill. 2d 43, 499 N.E.2d 459; *Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528, 416 N.E.2d 243; *Wirth v. Industrial Comm'n* (1974), 57 Ill. 2d 475, 312 N.E.2d 593; *Vera v. Industrial Comm'n* (1986), 150 Ill. App. 3d 1033, 502 N.E.2d 337.) In reliance upon this jurisdictional principle, our supreme court has recently held that the language in section 19(e) merely provides guidelines for the exercise of the Commission's discretion in the matter of the admissibility of evidence on review. *Werries v. Industrial Comm'n* (1986), 114 Ill. 2d 43, 499 N.E.2d 459.

■ The trial court mistakenly relied upon *Werries* to support its findings that the Commission should have disregarded Dr. Barnhart's testimony on causation because respondent failed to show good cause for not producing the medical evidence before the arbitrator. In *Werries,* our supreme court held that the Commission acted within its discretion in denying a request to present additional evidence on review. Here we are presented with the opposite situation, where the Commission considered the additional evidence. No language in *Werries* prohibits the Commission, absent an abuse of discretion, from considering additional evidence. We do not believe that the Commission need require the parties to establish the precise circumstances described in the guidelines set out in section 19(e). The guidelines merely direct the Commission as to situations in which it could properly exercise its discretion and refuse to consider additional evidence.

In the present case, the arbitrator considered the opinions of Drs. Dan and McKeever, presented on behalf of petitioner, that a causal connection might exist. Those doctors, however, also indicated that petitioner might have suffered the myocardial infarction even while resting. Thus, portions of their testimony supported respondent's contentions. The arbitrator's decision denying benefits was filed on Au-

gust 16, 1982. Over three years later, on December 9, 1985, the Commission rendered its decision upholding the finding of the arbitrator. On review, the Commission considered as additional evidence the opinions of respondent's witness, Dr. Barnhart, who found no causal connection. The facts here presented the Commission with an employee who was initially disabled in 1980, returned to work twice, and suffered disabling cardiac incidents twice more before she stopped working entirely. Since that time, she has continued to suffer additional consequences of the initial cardiac incident. She has undergone open heart surgery and other procedures which have provided the doctors with additional information about her condition. We conclude that the record contains no indication that the Commission abused its discretion in considering Dr. Barnhart's testimony offered on behalf of respondent on review. See *Vera v. Industrial Comm'n* (1986), 150 Ill. App. 3d 1033, 502 N.E.2d 337 (Commission did not abuse discretion in granting respondent's request to admit portion of physician's report as additional evidence on review).

■ Respondent next contends that the trial court erred in finding the Commission's initial decision wrong, as a matter of law, or against the manifest weight of the evidence. An employee seeking benefits for a heart disability bears the burden of establishing that the disability arose out of and in the course of employment. (*Weers v. Industrial Comm'n* (1984), 126 Ill. App. 3d 786, 467 N.E.2d 586.) The mere fact that an employee is at work when the heart attack occurs is insufficient to justify an award, absent proof of causal connection between the employment and the disability. (*Weers v. Industrial Comm'n* (1984), 126 Ill. App. 3d 786, 467 N.E.2d 586.) A heart attack may be compensable where petitioner proves that some act of employment was a causative factor. (*Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327.) The employment need not be the sole or principal factor of the disability. (*Sears, Roebuck & Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 59, 402 N.E.2d 231.) A preexisting heart condition does not preclude a finding that the heart attack is compensable where the Commission may legitimately infer from the evidence that the employee's work duties were a causative factor in the heart attack. (*Sears, Roebuck & Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 59, 402 N.E.2d 23; *Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327; *Old Ben Coal Co. v. Industrial Comm'n* (1986), 141 Ill. App. 3d 78, 489 N.E.2d 1159.) When work duties create a higher than normal degree of stress which contributes to the employee's attack, the necessary causation is established. *County of Cook v. Industrial Comm'n*

(1977), 69 Ill. 2d 10, 370 N.E.2d 520.

■ It is the function of the Commission to decide disputed questions of fact, including those of causation, and to resolve conflicting medical opinions. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 454 N.E.2d 655.) Its decision will not be disturbed unless contrary to the manifest weight of the evidence. *Weers v. Industrial Comm'n* (1984), 126 Ill. App. 3d 786, 467 N.E.2d 586; *Old Ben Coal Co. v. Industrial Comm'n* (1986), 141 Ill. App. 3d 78, 489 N.E.2d 1159.

■ Petitioner highlights her acts at work on July 8, 1980, including lifting 8½- by 14- by 4-inch ledger books from the bookshelf behind her desk, and similar books from a safe 15 feet away from her desk. There is no evidence that these, or any other, physical acts which petitioner engaged in at work constituted more strenuous or stressful activities than the type of acts required in normal daily activities. *Cf. Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327 (causal connection found where employee was digging hole in ground for over one hour prior to heart attack); *Board of Education v. Industrial Comm'n* (1986), 146 Ill. App. 3d 937, 497 N.E.2d 447 (causal connection found where employee helped carry 200-pound desk minutes before heart attack); *Old Ben Coal Co. v. Industrial Comm'n* (1986), 141 Ill. App. 3d 78, 489 N.E.2d 1159 (causal connection found where first cardiac symptoms appeared after strenuous, unusual exertion in fighting a fire at work for 30 minutes).

Petitioner also points out that she was under emotional stress due to the pressure of preparing the commission checks for the salesmen. There was no evidence, however, that this work, which petitioner had performed for 20 years, was unusual.

Quitmeier testified that he did not know if petitioner was behind in her work on July 8, 1980. He did not know if she was harassed by the salesmen to complete the quarterly task quickly.

In view of this evidence, the Commission was entitled to find that no unusually strenuous pressures were placed on petitioner prior to her myocardial infarction.

Petitioner states further that causal connection is established by objective medical evidence which shows that her myocardial infarction occurred at work on July 8, 1980, and not before or after that time.

Dr. Dan, petitioner's treating physician, testified that the CPK enzyme studies in July 1980 indicated that the infarction could have occurred on July 9, 1980, and not July 8 because the CPK generally goes up within six hours after the myocardial damage. Petitioner was

taken to the hospital before noon on July 8. The CPK at 1 p.m. on July 8 was 96, which was normal, and at 6:30 a.m. on the next day it was 972, which was "distinctly abnormal." The "actual myocardial tissue death occurred between those two values." It indicates the infarction was occurring on July 8. However, the myocardial infarction either occurred within a few hours before the 1 p.m. test on July 8 "and had not yet shown up in the blood or sometime up to several hours before this second CPK value of 972" at 6:30 a.m. on July 9.

Dr. McKeever testified that the infarction probably occurred at the point of the maximum pain, which did occur at work. "The main determining factor is the patient's symptoms, and [with] a patient who has recurrent angina, which can manifest itself as chest pain or arm pain, *** [the determining factor is] a changing pattern in that pain pattern." Dr. McKeever believed that petitioner described the July 1980 event at work as "one of the more severe pains that she had" experienced. "That to me suggested that there was definite major change in the pain pattern."

Dr. McKeever testified, however, that he was not aware that petitioner had experienced pain for 12 hours prior to the July 8, 1980, event and that the pain had kept her awake the night before. This information could change his opinion. "If she truly had pain for 12 hours, I would think that the infarction had already begun before she went to work."

Dr. Barnhart testified that it is difficult to determine when unstable angina becomes a myocardial infarction. "I would say somewhere within that period of the beginning of the pain or that evening or night when she was having pain at rest and subsequently to her hospitalization. It could even have occurred in the hospital. It's very hard to tell at this particular point in time."

Thus, in regard to whether the heart attack occurred at work, the medical evidence was conflicting. There was sufficient evidence to support a finding that it was not related to her work activities. *Cf. Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327 (causal connection found where doctor testified that on the day prior to his collapse the employee was in a preinfarctional state, that the pain or discomfort he felt increased on the following day, and that EKG and enzyme studies supported a conclusion that the myocardial infarction actually began on the same morning that the employee collapsed at work).

In finding no causal connection, the Commission also could rely on the testimony of petitioner's own medical experts, Drs. Dan and McKeever, as support for its conclusion. (See *Benson v. Industrial*

*Comm'n* (1982), 91 Ill. 2d 445, 440 N.E.2d 90.) Dr. Dan stated that petitioner suffered from a progressive condition of arteriosclerosis and that this was the cause of petitioner's myocardial infarction and subsequent congestive heart failure. Any exertion, either physical or emotional, could have been an overexertion and potentially harmful. Myocardial infarction was inevitable and petitioner could have had the heart attack either at rest or at work.

Dr. McKeever believed that there was a causal relationship between the 52-year-old petitioner's myocardial infarction and her work environment, but admitted that it was speculative to say what caused her heart attack and that factors other than the work environment could have caused it. He referred to the 10 years petitioner took an estrogen compound, which created high blood pressure, and her smoking 1½ to 2 packs of cigarettes per day from age 20, both of which could have aggravated her arteriosclerotic condition. Petitioner could have suffered the heart attack while resting.

The trial court highlights the dates of the two congestive heart failures, both of which occurred within several days after petitioner returned to work part time. Dr. Dan testified, however, that both of those events were directly tied to the July 8, 1980, heart attack, which the Commission found was not work related.

We conclude that there is ample evidence in the record to support the Commission's initial finding of no causal connection, and that, in any event, its decision was not against the manifest weight of the evidence. The Commission here was entitled to find that any exertion would be overexertion due to the degenerative heart disease present in petitioner.

For these reasons, the judgment of the circuit court of Cook County is reversed, the final decision of the Commission is vacated, and its original December 1985 decision is reinstated.

Judgment reversed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and CALVO, JJ., concur.