JAMES HEATH, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jewel Companies, Appellee).

First District (Industrial Commission Division)   No. 1—92—0409WC

Opinion filed November 12, 1993.—Rehearing denied February 9, 1994.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Lisa Thaviu, of counsel), for appellant.

Roddy, Power, Leahy, Guill, Zima & Gifford, Ltd., of Chicago (John H. Guill and Alan D. Kalinoski, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

James Heath (claimant) filed an application for adjustment of claim pursuant to the Illinois Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) against Jewel Companies (employer) alleging that he sustained a work-related injury. Following a hearing, the arbitrator denied benefits, finding that claimant failed to prove that the accident arose out of claimant's employment. The Industrial Commission (Commission) affirmed and on judicial review the circuit court confirmed.

On June 28, 1985, claimant, a stock clerk, was working in the produce section at Jewel. Although he was supposed to be off work at

10:30 p.m., a "late load" was delivered and claimant stayed to unload it. At the time of the incident, the store was closed and there were two other clerks (John Pottinger and "Paul") in the store.

While claimant was working, the door to the back room of the produce section opened. Claimant looked up and saw a shotgun. Claimant heard an explosion. He had been shot in the head. Claimant did not recognize the person who shot him.

Claimant remained in the hospital for one month. He subsequently had cosmetic surgery and participated in rehabilitation. Sometime later, he voluntarily committed himself to a hospital due to depression. Claimant still suffers from short-term memory loss, and he tires easily. Claimant also suffers from headaches and dizziness.

At the hearing before the Commission, claimant attempted to admit into evidence the testimony of John Pottinger. Claimant's attorney stated that at the time of arbitration, "Paul" and Pottinger were not able to be located. Nothing was said as to what action, if any, was taken to locate either of the two. An offer of proof was made as to what Pottinger would say had he been called to testify. The Commission refused to consider the offer of proof in rendering its decision.

Claimant raises two issues on appeal: (1) whether the Commission's refusal to allow Pottinger to testify was error; and (2) whether the Commission's decision that the claimant did not prove that his injury arose out of his employment was against the manifest weight of the evidence.

We affirm.

## I

In February 1989, when the arbitrator rendered his decision in this case, section 19(e) of the Act provided in relevant part as follows:

"Additional evidence may be adduced where such evidence (1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3) was, for good cause, not introduced at the arbitration hearing." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

This section has subsequently been amended to provide that no additional evidence will be allowed to be introduced before the Commission on review. (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(e), amended by Pub. Act 86—998, § 1, eff. December 18, 1989.) However, the Commission, by rule, has only applied the amendment to those proceedings where the first hearing before the arbitrator commenced

after December 18, 1989. 50 Ill. Adm. Code § 7040.40b, amended at 14 Ill. Reg. 13173, eff. August 1, 1990.

In accordance with the above, the pre-amendment version of section 19(e) applies to the present case. Further, Pottinger's testimony relates to neither a condition of the employee since the time of arbitration nor to matters that occurred or conditions that developed after arbitration. As such the resolution of this issue depends upon whether Pottinger's testimony "was, for good cause, not introduced at the arbitration hearing."

The jurisdiction of the Commission is original, and generally whether or not additional evidence should be heard is a question within the sound discretion of the Commission. (*Werries v. Industrial Comm'n* (1986), 114 Ill. 2d 43, 499 N.E.2d 459.) Section 19(e) merely provides guidelines for the exercise of a commissioner's discretion in the matter of admissibility of evidence at the review hearing. *Werries*, 114 Ill. 2d 43, 499 N.E.2d 459.

In *Werries*, the claimant was allegedly injured when he slipped and fell. At the hearing before the Commission, the claimant sought to introduce for the first time the testimony of his foreman who was present when claimant was injured and records of his chiropractor. The Commission refused to admit either, finding that the evidence had been available to the claimant at the time of arbitration.

The supreme court held that there was nothing offered by the claimant at the hearing on review that amounted to a showing of good cause for his failure to introduce the additional evidence. The evidence was not shown to be unavailable at the time of arbitration, nor was any explanation offered for its absence. Second, claimant's contention that the evidence should be allowed in to offset an erroneous judgment made by the arbitrator would result in an unworkable procedural rule premised upon a party's subjective *ex post facto* evaluation of an arbitrator's decision. The court concluded that the claimant assumed a significant risk by withholding evidence that was readily available and that could have been presented at the time of arbitration.

In *Vesco Ventilation & Equipment Sales v. Industrial Comm'n* (1988), 168 Ill. App. 3d 959, 523 N.E.2d 111, the court stated that the language in section 19(e) merely provides guidelines and there is no language in *Werries* that prohibits the Commission, absent an abuse of discretion, from considering additional evidence and a party is not required to establish the precise circumstances described in section 19(e). In *Vesco Ventilation & Equipment Sales*, the court held that the Commission did not abuse its discretion in considering a doctor's testimony on review. See also *Wantroba v. Industrial Comm'n* (1993),

248 Ill. App. 3d 978 (not an abuse of discretion to exclude evidence where claimant did not take deposition or request continuance); *Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327 (Commission's decision affirmed because good cause was not shown because the evidence not admitted by the Commission could have been made available at the time of arbitration and no continuance was requested); *Gray Hill, Inc. v. Industrial Comm'n* (1986), 145 Ill. App. 3d 371, 495 N.E.2d 1030 (evidence properly excluded before the Commission hearing because the employer knew of the witnesses' existence prior to the arbitration hearing).

█ In the case *sub judice*, the claimant contends that Pottinger's testimony should have been allowed at the Commission because Pottinger could not be found at the time of arbitration. Claimant points to the following testimony:

"MR. GUILL [Respondent's attorney]: Now, who were the other employees working with you at the time of this incident?

HEATH (claimant): One was, who I mentioned that came to get me, was John Pottinger. The other man I can't—Paul something, and I can't—I can't remember his last name. I suppose he quit I guess. Both I guess are gone now."

While this testimony does show that Pottinger did not work for the employer any longer, it does not show that he could not be found.

Claimant's attorney admitted at oral argument that, other than the aforementioned, Pottinger was not referred to at the arbitration hearing. Similarly, there are no records of a subpoena for Pottinger or requests that the employer supply claimant with information on Pottinger even though claimant's attorney admitted at oral argument that he knew Pottinger's last known address. Furthermore, the police report of the incident contained the names and addresses of "Paul" and Pottinger. Even if we agreed with the claimant that due diligence does not figure into the definition of good cause, there are two facts that go beyond due diligence. First, claimant did not request a continuance in order to obtain Pottinger's possible testimony; in fact, claimant did not object to the arbitrator's preference to close proofs. Secondly, no offer of proof by the claimant was made.

At the Commission's hearing, Pottinger was sworn in; however, he did not testify because of the employer's objection. The claimant's attorney stated that Pottinger was an eyewitness who was unable to be located at the time of arbitration and that "Paul" was still not located. The Commissioner did allow an offer of proof by claimant that, if called to testify, Pottinger would state that a masked man with a shotgun asked if "Paul" or Pottinger had the combination to the safe

and when the safe opened. The man asked whether there was anyone else in the store, and when he was told about claimant, the man went into the produce section and shot the claimant.

In its decision, the Commission stated:

"Petitioner did not seek a continuance in order to locate the witness, nor did he inform the Arbitrator of the unavailability of this witness. Furthermore, Petitioner did not make an offer of proof at arbitration, and Respondent did not receive any requests for any information concerning the witness. Accordingly, the Commission concurs with Commissioner Gilgis' decision to exclude this witness."

For these same reasons we conclude that the Commission's decision to exclude Pottinger's testimony was in no way an abuse of discretion.

II

■ In order for an injury to be compensable under the Act, the injury must "arise out of" and "in the course of" the employment. (Ill. Rev. Stat. 1985, ch. 48, par. 138.2.) This court recently stated in *Best Foods v. Industrial Comm'n* (1992), 231 Ill. App. 3d 1066, 1068-69, 596 N.E.2d 834:

"The phrase 'in the course of' refers to the time, place, and circumstances under which the accident occurred ***. [Citation.] That the injury arose in the course of the employment is not sufficient to impose liability; to be compensable, the injury must also 'arise out of' the employment. [Citation.] For an injury to 'arise out of' the employment, its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury; if an employee is exposed to a risk common to the general public to a greater degree than other persons, the accidental injury is also said to arise out of his employment."

The claimant contends that even without Pottinger's testimony, there was sufficient evidence to show that the injury arose out of his employment and the Commission's decision to the contrary was against the manifest weight of the evidence.

The claimant heavily relies on *Holthaus v. Industrial Comm'n* (1984), 127 Ill. App. 3d 732, 469 N.E.2d 237, and *County of Cook v. Industrial Comm'n* (1988), 165 Ill. App. 3d 1005, 520 N.E.2d 896. In *Holthaus*, the appellate court reversed the Commission's denial of benefits. In that case, the claimant was a swimming pool manager who was getting the pool ready for the new season. An escaped convict, looking for a car to steal, entered the pool area and shot the claimant. The appellate court stated that the claimant did not have

to establish both that the environment increased the risk of attack *and* that the attack was motivated by something related to claimant's employment, but that either one suffices to establish the requisite causal link. As such, *Holthaus* involved a question of law.

In *County of Cook v. Industrial Comm'n* (1988), 165 Ill. App. 3d 1005, 520 N.E.2d 896, the appellate court affirmed an award of benefits. In that case, no lunchroom was provided for the employees and on the premises felony courtrooms were in session daily. The claimant was robbed and stabbed while she ate lunch in her car in the parking lot. The court noted that if the injury results from a hazard to which the employee would have been equally exposed apart from the employment, then it does not arise out of it. Because eating in the car required her to remain in the lot for a longer period of time than a member of the public would remain in the lot, the environment increased the risk of attack. Unlike *Holthaus*, this was a fact question, and the court held that the Commission's decision was not against the manifest weight of the evidence.

In the case *sub judice*, the employer contends that *Greene v. Industrial Comm'n* (1981), 87 Ill. 2d 1, 428 N.E.2d 476, is a case more on point. In *Greene*, the supreme court affirmed the denial of benefits where the decedent was found close to his service vehicle in the employer's parking lot. He had been stabbed numerous times. Because there was no evidence of a forced entry and no evidence that anything was taken from the vehicle or his person, the supreme court concluded that the death was susceptible to the inference that it resulted from a purely personal risk, from a risk common to the public at large, or from a risk incidental to the decedent's employment.

The court noted that an injury resulting from an attack where reasons are not set forth in the record will not necessarily preclude recovery; however, the lack of such reasons should not be construed as permitting an award in every instance where the record fails to unambiguously demonstrate that the motive for the assault was based on personal reasons. The court concluded that the untouched premises and the fact that the assailant brutally stabbed the decedent 21 times showed that theft did not appear to be the motive as it would not take 21 stabs to secure theft. Therefore, the Commission's decision was not against the manifest weight of the evidence.

In the case *sub judice*, the question is not whether there were facts presented by the claimant that would establish that the environment increased the risk of attack or the attack was motivated by something related to claimant's employment. Rather, the question is whether this is the *only* reasonable inference.

There are no facts that the store itself was a risky environment or that the attack was motivated by something related to claimant's employment. There is nothing that suggests the neighborhood was dangerous or that the store's location lent itself to criminal activity. There are no facts presented that a closed store necessarily makes the premises a place that would cause the risk of attack to increase. The claimant infers that the store was not properly locked or that a last check of the store was not properly done to make sure that no one unauthorized remained in the store after hours. While these may be reasonable inferences, they are not the only inferences to be drawn from the facts.

On the contrary, there are no facts that the store was robbed of any money or goods. There are no facts that anyone in the store was robbed. There are no facts that anyone except claimant was injured. Therefore, while claimant's arguments may support an opposite conclusion, they are far from showing that conclusion to be clearly evident.

The claimant strongly argues that claimant was exposed to a risk to a greater degree than the general public. The facts in the record that support this are: the store was closed, only two other employees were working with the claimant at the time of the incident, claimant did not have access to the store's money, and a man with a gun was in the store after it was closed. Claimant asserts that this shows the claimant was at a higher degree of risk than the public because the public was not allowed in the store after it closed. Claimant, however, does not cite any authority for the proposition that being in one's place of employment at a time when the general public is excluded is in itself sufficient to mandate recovery as a matter of law.

The facts regarding the reason for the attack are sparse. The claimant testified that while he was working, a man with a shotgun came into the area and shot him. While the parties both argue that these facts support their respective inferences, we cannot say that either is clearly evident. It is the claimant's burden to show that the assault was work-related. *Greene*, 87 Ill. 2d at 5.

The manifest weight of the evidence standard applies. In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, the court stated:

"It is the province of the Commission to weigh and resolve conflicts in testimony *** and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.) It has been observed that "[t]he manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276.

As such, the Commission's decision that the attack did not arise out of claimant's employment is affirmed.

Affirmed.

MCCULLOUGH, P.J., and WOODWARD, STOUDER, and RARICK, JJ., concur.