CATERPILLAR, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (David C. Hankins *et al.*, Appellees).

Third District (Industrial Commission Division)   No. 3—91—0154WC

Opinion filed March 27, 1992.—Rehearing denied June 2, 1992.

Robert F. Fahey, of Peoria, for appellant.

Roland W. Burris, Attorney General, of Springfield (Robert J. Malooly, Assistant Attorney General, of Chicago, of counsel), for appellee Jerry Cosentino.

Arthur R. Kingery, of Strodel, Kingery & Duree, Associated, of Peoria, for appellee David C. Hankins.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employer, Caterpillar, Inc. (employer), appeals from an order of the circuit court of Marshall County confirming an Illinois Industrial Commission (Commission) decision finding that David C. Hankins (claimant) had sustained a permanent 100% loss of the use of his right hand. The Commission's decision awarded claimant temporary total disability (48 6/7 weeks), permanent partial disability (190 weeks) and interest pursuant to section 19(n) of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(n)). We affirm.

Claimant testified that while working at Caterpillar on September 13, 1982, he sustained a crush-type injury to his right hand when it was caught between a jig-mill and a 2,000-pound engine block which was hanging from a hoist. Claimant reported the injury to his foreman, Paul Arnet, but did not go to first aid until two days later.

On September 19, 1982, claimant went to Methodist Hospital, where X rays were taken and he was told to "see an orthopedic right away." The following Monday, claimant returned to Caterpillar and was treated by Dr. Cooper, who casted claimant's right hand and referred him to Drs. Wood, Russo and Puentes. Dr. Puentes subsequently referred claimant to the Mayo Clinic in Rochester, Minnesota, where claimant was treated by Dr. Beckenbaugh. Dr. Beckenbaugh diagnosed plaintiff's condition as Secretan's disease and performed surgery on claimant's right hand. On cross-examination, claimant denied injuring his right hand while operating a potato digger the Saturday before the accident at work but stated "I probably told them I was sore. My whole body was sore."

Two co-employees, Robert Wilkins and Bill Traver, testified that they were present when claimant sustained the injury and neither noticed him having any problems with his right hand prior thereto.

Merle Jenkins, claimant's neighbor and co-employee at Caterpillar, testified that he saw claimant on Saturday, September 11, 1982. According to Jenkins, claimant said "he had hurt his hand digging potatoes that day." Jenkins also stated that claimant told him "he was going to go to first aid Monday."

Patrick Richmond, another neighbor, testified that he also saw claimant on Saturday, September 11, 1982. According to Richmond, claimant stopped by his house at about 4 p.m., showed Richmond a knot on the back of his right hand and said that while he was plowing potatoes he "pulled something or something stung me in there." Richmond also stated that approximately one week after this conversation claimant told him that he went to Caterpillar medical and told them that he had hit his hand at work. When Richmond questioned claimant as to whether that was not the same injury that had occurred last week when he was digging potatoes, claimant said "No, I hurt it at work. *** I turned it into Caterpillar. *** [T]hey will take care of it."

In addition to claimant, those present during the potato harvest were his wife, Orla, his father-in-law, Larry Stroup, and his daughter, Denise Salisbury. They all testified that claimant did not hurt his hand while digging potatoes. Orla Hankins, who was also present with her husband when they visited the Jenkinses on September 11, 1982, denied that there was any conversation about claimant injuring his hand while digging potatoes.

The only medical testimony in this case was the deposition of Dr. Robert Beckenbaugh of the Mayo Clinic. Dr. Beckenbaugh testified that he surgically removed a fibrous growth from the tendon of claimant's right hand which was compatible with Secretan's disease. Dr. Beckenbaugh described Secretan's disease as a process initiated by a single traumatic injury to the hand which is perpetuated by minor trauma. He explained:

"In Secretan's disease, there is classically an injury of either minor or major nature to the backside or top of the hand, which results in some bleeding and swelling. Now, in an uncomplicated situation, the blood in the swollen tissues would normally be absorbed and the swelling would go down and the wound would heal. In Secretan's disease, for reasons which are unclear, but thought to be related to repetitive minor trauma, the swelling, rather than clearing, persists, and bleeding continually recurs, which results then in the formation of a scar tis-

sue mass, rather than the normal process of healing, which would simply clear the extra tissues in the bloodstream out of the area."

According to Dr. Beckenbaugh, while the crushing injury claimant sustained at work was not, in and of itself, the cause of Secretan's disease, it was, to a reasonable degree of medical certainty, the initial injury which gave rise to the condition. He further stated that the repetitive trauma, which in conjunction with the initial injury is the cause of Secretan's disease, may be minor in nature, such as banging a hand against a door or even bumping it against a book. Finally, Dr. Beckenbaugh said there was nothing in claimant's case history that would suggest that the repetitive trauma was self-induced.

On appeal, the employer contends that the manifest weight of the evidence in this case does not support a finding that claimant's Secretan's disease was proximately caused by a work-related injury. We disagree.

The employer first argues that the manifest weight of the evidence does not support a finding that claimant's injury occurred at work or that it was accidental. Rather, the employer postulates that claimant's initial injury did not occur at work but while he was digging potatoes. The employer further argues that even if the initial injury did occur at work, the repetitive trauma leading to Secretan's disease did not, and/or it was intentionally inflicted.

■■ As was explained *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221:

> "In a work[er's] compensation proceeding the claimant has the burden of proving by a preponderance of the evidence the elements of his claim and, in particular, that his injury arose out of and in the course of his employment. [Citations.] It is the function of the Industrial Commission to determine questions of fact and causation [citations], to judge the credibility of witnesses [citations], and to resolve conflicting medical evidence [citations]. Though a court might draw different inferences from the evidence, it is axiomatic that findings of the Industrial Commission will not be reversed unless they are against the manifest weight of the evidence." (*O'Dette*, 79 Ill. 2d at 253, citing *Phelps v. Industrial Comm'n* (1979), 77 Ill. 2d 72.)

The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426 N.E.2d 1276.

In applying these well-established principles to the case *sub judice*, we are in agreement with the trial court. While the employer points to substantial evidence in the record which would support a finding that claimant's initial injury was a result of the potato-harvesting incident (the testimony of Merle Jenkins and Patrick Richmond), the record also contains substantial evidence that it was not (testimony of claimant, Orla Hankins, Larry Strub and Denise Salisbury). While the employer notes that claimant's witnesses are all related to him, their credibility, along with that of Merle Jenkins and Patrick Richmond, was for the trier of fact to determine. Similarly, despite certain inconsistencies, we are of the opinion that the record contains ample evidence to support a finding that the initial injury to claimant's hand occurred on September 13, 1982, while he was working at Caterpillar (the testimony of claimant, Robert Wilkins and Bill Traver).

■ Further, despite the employer's arguments to the contrary, the record does not contain any credible evidence which would support a finding that the repetitive trauma giving rise to Secretan's disease was self-inflicted. The only testimony in the record regarding whether the repetitive trauma was self-inflicted is that of Dr. Beckenbaugh where he states "[t]here is nothing in our history to suggest that they were consciously self-induced." In sum, the opposite conclusions suggested by the employer are not clearly evident.

Having found that the manifest weight of the evidence is sufficient to support findings that claimant's initial injury occurred at Caterpillar and was not intentional, we turn to the employer's contention that claimant's disability was not work-related. The argument is that because Secretan's syndrome is a disease caused by repetitive trauma and because it is undisputed that the repetitive trauma occurred at a time when claimant was not employed, then it follows that claimant's disability did not arise as a result of his employment at Caterpillar. In support of this argument, employer relies on a statement made by Dr. Beckenbaugh to the effect that the cause of the bleeding which led to the formation of scar tissue was not the accident of September 13, 1982. It must be remembered, however, that Dr. Beckenbaugh also stated that this same injury gave rise to the condition which made Secretan's disease possible. We do not find any inconsistency in these two statements. While Secretan's disease is caused by repetitive trauma, it is the initial injury that gives rise to a condition that allows minor repetitive trauma to cause scar tissue. As we view Dr. Beckenbaugh's testimony, he is saying that Secretan's disease is a result of an initial injury followed by minor, repetitive trauma. Both must be

present. There must be an initial blow of sufficient magnitude to cause swelling and bleeding followed by minor, repetitive trauma. While the repetitive trauma, in and of itself, may be insufficient to cause swelling or bleeding, it is sufficient to perpetuate the swelling and bleeding caused by the initial injury.

██ █ This being the case, it becomes clear that claimant's disability is compensable, even though it was caused by non-work-related repetitive trauma. In order to constitute an accidental injury within the meaning of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*), the claimant need only show that some act or phase of the employment was a causative factor of the resulting injury. (*County of Cook v. Industrial Comm'n* (1977), 69 Ill. 2d 10, 370 N.E.2d 520.) This is a fact question to be determined by the Industrial Commission, and we will not substitute our judgment for that of the Commission on the question of causation unless the Commission's decision is against the manifest weight of the evidence. *Illinois Valley Irrigation, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 234, 362 N.E.2d 339. According to Professor Larson:

> "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent, intervening cause attributable to claimant's own intentional conduct." 1 A. Larson, Workmen's Compensation §13.00, at 3—502 (1990).

In explaining this principle, Professor Larson cites to a Utah case, *Perchelli v. Utah State Industrial Comm'n* (1970), 25 Utah 2d 58, 475 P.2d 835, where claimant hurt his back at work and several years later suffered a herniated disc triggered by sneezing. The trial court's finding that the sneezing episode was an independent cause of claimant's disability was held to be error on appeal. Professor Larson explains that an injury is compensable:

> "[I]f the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of a compensable injury, associated with an exertion that in and of itself would not be unreasonable in the circumstances." 1 A. Larson, Workmen's Compensation, §13.11(a), at 3—516 through 3—517 (1990).

██ While employer strongly relies on *Osco Drug, Inc. v. Industrial Comm'n* (1967), 36 Ill. 2d 361, 223 N.E.2d 105, we find it distinguishable. In *Osco Drug, Inc.*, the claimant contended that while working she received a blow to her hand which caused a hematoma

which developed into cancer. The employer produced four experts, all with considerable experience, who testified that there was no causal connection between the blow suffered by claimant and the tumor. While Dr. Keenan did testify on claimant's behalf, he had no connection with the diagnosis or treatment of claimant and could only express the opinion that "there *might* or *could* be a cause or relationship between the injury and the cancer." (Emphasis added.)

In *Osco Drug, Inc.*, the supreme court found that Dr. Keenan's testimony was not credible as a matter of law. Importantly, in *Osco Drug, Inc.*, there was ample testimony that the blow received by claimant could not have caused the cancer. In the case *sub judice*, the sole and undisputed medical testimony is that, to a reasonable degree of medical certainty, the injury claimant sustained at work gave rise to the condition which caused Secretan's disease.

The employer's final contention is that claimant's position must fail because the record does not contain any evidence regarding the repetitive trauma which caused the claimant's Secretan's disease. While this is true, it does not obtain a different result. The employer does not dispute that the only medical evidence in the record diagnosed claimant's disability to be a result of Secretan's disease. Also undisputed is the fact that Secretan's disease is caused by repetitive trauma following an initial injury. The fact that claimant sustained repetitive trauma is therefore axiomatic and in no need of proof. Given that the record *sub judice* does not contain any evidence that the repetitive trauma was self-induced or associated with an exertion that, in and of itself, would be unreasonable under the circumstances (1 A. Larson, Workmen's Compensation §13.11(a), at 3—516 through 3—517 (1990)), we fail to see how the lack of evidence concerning the cause, nature and extent of claimant's repetitive trauma could defeat his claim.

We also find unpersuasive the employer's argument that because the repetitive trauma suffered by claimant caused swelling and bleeding, it could not have been minor or insignificant. It must be remembered, however, that Dr. Beckenbaugh never stated that it was the repetitive trauma that caused the swelling or bleeding. What Dr. Beckenbaugh did say was that minor, repetitive trauma such as banging the hand against a door or even a book was sufficient to perpetuate the swelling and bleeding caused by the initial injury. While employer cites *Gallego v. Industrial Comm'n* (1988), 168 Ill. App. 3d 259, 522 N.E.2d 692, we do not find it to be of any assistance. In *Gallego*, the only Illinois case we have been able to find involving

Secretan's disease, the record contains substantial credible evidence to the effect that the claimant's injury was self-induced.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and LEWIS, JJ., concur.