THOMAS WANTROBA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Kentucky Fried Chicken, Appellee).

First District (Industrial Commission Division)   No. 1—92—2692WC

Opinion filed June 18, 1993.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Lawrence G. Gordon, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (James W. Stevenson, Jr., of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal by claimant Thomas Wantroba from an order of the circuit court of Cook County confirming the decision of the Illinois Industrial Commission (Commission). The respondent employer in this case is Kentucky Fried Chicken. The arbitrator awarded claimant $210 per week for 16 weeks' temporary total disability (TTD) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(b)), and $189 for 15 weeks' permanent partial disability (PPD) to the extent of 3% of the person as a whole. The Commission increased the TTD award to 16$\frac{1}{7}$ weeks, and increased the PPD to $189 per week for 40 weeks' PPD to the extent of 8% of the person as a whole (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)(2)), and $21,001.90 for necessary medical expenses (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(a)).

On appeal, claimant asks this court to consider whether the Commission's refusal to allow claimant's medical expert to testify was error and whether the Commission's decision was against the manifest weight of the evidence for the following reasons: (1) the decision failed to include $8,016 of medical expenses claimed to have resulted from the accident; (2) TTD should have been awarded for 16$\frac{3}{7}$ weeks; and (3) PPD should have been found to amount to 15% of the person as a whole. Although the decision of the Commission will be modified as to the award of TTD, the remainder of the circuit court's decision will be affirmed.

On November 16, 1985, while employed as an assistant manager for respondent, claimant was taking receipts to a bank and his car was involved in a collision with a truck. Claimant was treated for a

severe whiplash-type of injury, laceration of the soft tissue of the cervical spine, contusion of the right shoulder, and post-traumatic low-back pain secondary to disc damage and injury to the nerve roots in that area.

■ Initially, we determine whether the Commission's refusal to allow claimant's medical expert to testify was error. On October 12, 1989, claimant filed his petition for review of the arbitrator's decision with the Commission. However, the hearing at which claimant attempted to introduce Dr. John Skuza's testimony was not conducted until July 17, 1990. At the time claimant filed the petition for review with the Commission, section 19(e) of the Workers' Compensation Act (Act) provided as follows concerning hearings by the Commission:

> "Additional evidence may be adduced where such evidence (1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3) was, for good cause, not introduced at the arbitration hearing." (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(e).)

Section 19(e) has now been amended to provide that no additional evidence will be allowed to be introduced before the Commission on review of an arbitrator's decision. (See Ill. Rev. Stat. 1989, ch. 48, par. 138.19(e) (amended by Pub. Act 86—998, §1, eff. Dec. 18, 1989 (1989 Ill. Laws 6749)).) However, the Commission, by rule, has applied the amendment only to proceedings in which the first hearing of record before the arbitrator commenced after December 18, 1989. (See 50 Ill. Adm. Code §7040.40(b) (1991) (amended at 14 Ill. Reg. 13173, eff. Aug. 1, 1990).) The Commission rule, in effect at the time of the Commission hearing at which claimant tried to introduce the evidence, limited additional evidence to be presented to the Commission in conformance with the three conditions set forth in the statute which was in effect prior to December 18, 1989. 50 Ill. Adm. Code §7040.40(b) (1985).

The testimony by Skuza did not relate to the condition of the claimant since arbitration or to a matter that occurred or a condition that developed after the arbitration hearing. Skuza's testimony related to the second hospitalization of claimant from June 30 to July 4, 1986, regarding a neurogenic bladder condition, which the arbitrator had found not to be causally related to the accident. The only category of section 19(e) under which this evidence would be admitted, therefore, would necessitate that claimant demonstrate good cause for not presenting that evidence at the arbitration hearing. However, this court has stated that the provisions of section 19(e) with regard to ad-

mitting additional evidence before the Commission are merely guidelines, directing the Commission to situations in which it could properly exercise its discretion, and the parties need not establish the precise circumstances described in section 19(e) guidelines for the evidence to be admissible in the discretion of the Commission. *Vesco Ventilation & Equipment Sales v. Industrial Comm'n* (1988), 168 Ill. App. 3d 959, 963, 523 N.E.2d 111, 114.

Unlike the case at bar, *Vesco Ventilation* concerned the propriety of the Commission admitting evidence. In *Werries v. Industrial Comm'n* (1986), 114 Ill. 2d 43, 48, 499 N.E.2d 459, 461, the Illinois Supreme Court considered the Commission's refusal to admit evidence, as here, and noted that the determination of whether additional evidence should be heard rests within the Commission's sound discretion. In upholding the refusal to admit the evidence, the Illinois Supreme Court stated in *Werries*:

> "We would also point out that the result reached today is consistent with the Industrial Commission's position that 'an Arbitrator must have all available evidence before him at the time of hearing in order to render a proper decision.' (Dohe v. City of Chicago, Department of Public Works, Bureau of Construction (1982), Ill. Indus. Com. No. 82 IIC 203.) In numerous published decisions, the Commission has denied litigants the opportunity to present additional evidence on review, reasoning that the 'failure to make reasonable efforts to present all available evidence to the Arbitrator deprive[s] him of the opportunity to review all the evidence together before reaching a decision, and only serve[s] to hamper the efficient administration of the Workers' Compensation System, to the potential detriment of the parties in all other cases.' (Feliciano v. Sidney Wanzer & Sons, Inc. (1982), Ill. Indus. Com. No. 82 IIC 727; see also Edmones v. Kluwozon Retreat Center (1985), Ill. Indus. Com. No. 85 IIC 29; Corirossi v. Northern Illinois Gas Co. (1985), Ill. Indus. Com. No. 85 IIC 125; Stoutemire v. Stewart Warner Corp. (1984), Ill. Indus. Com. No. 84 IIC 311; Smith v. Schaumburg Fire Department (1983), Ill. Indus. Com. No. 83 IIC 267; Breece v. Crown Steel Sales, Inc. (1982), Ill. Indus. Com. No. 82 IIC 445.) The claimant's counsel in the present case assumed a significant risk by withholding evidence that was readily available and that could have been presented at the time of arbitration. We therefore hold that it was within the commissioner's discretion to deny the claimant's request to present

this additional evidence on review." *Werries*, 114 Ill. 2d at 50-51, 499 N.E.2d at 462.

In this case, the first hearing was conducted by the arbitrator on February 9, 1988. At the end of claimant's testimony on February 11, 1988, the arbitrator asked claimant's attorney if he had any exhibits and was informed that the exhibits would be presented "following deposition." The arbitrator ruled that respondent would be allowed to present witnesses, and inquired of claimant as to how much time was needed for deposition. Claimant's attorney stated he hoped to schedule two depositions within 60 days. The arbitrator set April 11, 1988, to close proofs. The stipulation sheet was amended to provide that, from the time claimant returned to work after the accident until the date of his termination, claimant missed five weeks of work instead of four weeks.

The next hearing was conducted on April 11, 1988. After respondent presented witnesses, the parties tendered exhibits. Among the exhibits tendered were medical reports from claimant's treating physician, Dr. Augustyn Stec. Respondent objected to the medical reports being offered when claimant had requested a 60-day continuance for deposition which was not taken. Respondent specifically complained that it was given no opportunity to respond to these documents which were being admitted into evidence. Counsel for claimant and the arbitrator did not recall any definite scheduling of depositions or an indication that depositions would be taken. The arbitrator reserved his ruling on this objection.

On March 9, 1989, a hearing was conducted to close proofs. The first exhibit was the evidence deposition of Stec. In addition, the evidence deposition of Dr. David Shenker, an examining physician, was placed into evidence by respondent. There was no indication anywhere in the record that Skuza was unavailable on March 9, 1989, to testify, that claimant wanted to call him, or why he could not have been deposed earlier.

■ On review before the Commission, claimant attempted to have Skuza testify at a hearing before Commissioner Richard Gilgas on July 17, 1990. Respondent objected to the consideration of this additional testimony since claimant never presented Skuza as a witness before the arbitrator, did not depose him even though the arbitration proceeding was continued for depositions, and did not indicate at the last hearing before the arbitrator that he wanted to call Skuza as a witness but could not because Skuza was unavailable to testify as claimant's attorney represented to the Commissioner. Respondent complained that at the time the proofs were closed before the arbitra-

tor, claimant was satisfied that the information regarding what Skuza did for claimant was introduced through Stec. Claimant's attorney conceded that was true, but argued that since a substantial amount of uncompensated bills were involved, it would be unfair to claimant not to allow Skuza to testify. The Commissioner sustained the objection to the additional evidence, but allowed Skuza to testify as an offer of proof. When Skuza testified in his offer of proof, he did not testify he was not available on the date of the last hearing before the arbitrator or for an evidence deposition prior thereto.

Under the facts of this case, claimant had ample opportunity to take Skuza's deposition or to seek a continuance in order to take a deposition or to produce the doctor to testify. Based on *Werries*, the refusal to admit the evidence in the case at bar was not an abuse of discretion.

Next, we consider whether the Commission's decision was against the manifest weight of the evidence for the following reasons: (1) the decision failed to include $8,016 of medical expenses claimed to have resulted from the accident; (2) TTD should have been awarded for $16^3/_7$ weeks; and (3) PPD should have been found to amount to 15% of the person as a whole. Initially, it must be noted that, at oral argument, respondent conceded claimant should have been awarded $16^3/_7$ weeks' TTD. As a result, we modify the Commission's decision so as to award claimant TTD for $16^3/_7$ weeks instead of $16^1/_7$ weeks.

Claimant argues that he was entitled to an additional $8,016 in medical expenses. Although claimant's motion was allowed to amend his brief to correct the amount of medical expenses sought on appeal, claimant's brief does not contain a specific argument concerning the medical bills and, except to the extent that he has argued there is a causal relationship between the neurogenic bladder condition and the accident, he has waived any arguments concerning the medical expenses.

Claimant argues he deserves an award of PPD to the extent of 15% of the person as a whole instead of 8%. He primarily argues that there was proved to have been a causal relationship between the accident and his neurogenic bladder condition. He contends Stec's opinion should have been accepted because Stec consulted a urologist, Skuza, while Shenker, respondent's expert, was not a urologist.

In March 1986, claimant began treatment for problems he was experiencing with regard to urinating and defecating. After examinations by Stec and Skuza, claimant was rehospitalized on June 30, 1986. According to Stec's testimony, Skuza found a neurogenic bladder, flaccid type. That meant the muscles responsible for urination

were weak. It was Stec's impression, at that time, that claimant's bladder difficulties were probably resulting "from lumbosacral nerve root injuries with faulty innervation after injury of the bladder." The bladder condition could have resulted from the type of injuries claimant sustained in the November 1985 automobile accident. Stec postulated that, during the accident, claimant had trauma to the spine which resulted in traction on the nerve roots, especially with increased mobility due to the congenital spondylolysis and spondylolisthesis. Stec opined this "could cause the stretch injury, traction injury of the nerve roots in the lumbar region."

Shenker testified that a contusion of the cauda equina, multiple lumbosacral nerve roots running in the dorsal sac below the spinal cord, is a very serious injury and there would be an immediate problem, not something that was delayed. There was no history of sacrosensory loss and no evidence of dramatic changes in bladder or bowel function or a disc change or impairment of nerve root function. There are a number of different causes for this type of problem. Shenker did not believe, based on the findings at both admissions and the time that had elapsed between them, that there was any evidence that indicated that the neurogenic bladder was related to the accident in November 1985.

■ The Commission adopted the arbitrator's findings that the November 16, 1985, accident aggravated claimant's preexisting spondylolisthesis, but did not cause the neurogenic bladder problem. Although Dr. Stec postulated that the impact from the trauma to the spine resulted in traction on the nerve roots causing claimant's bladder condition, there was no evidence claimant sustained any contusion or blow directly to the low back during the accident. Dr. Shenker's testimony that there was nothing to indicate claimant's neurologic complaints were in any way connected to the accident was adopted by the arbitrator and confirmed by the Commission.

Those findings are not contrary to the manifest weight of the evidence. With regard to the medical expenses, the Commission's finding that there was no causal relationship between the neurogenic bladder condition and the accident justifies the denial of the remaining medical bills which claimant now seeks.

If the Commission's decision is supported by the evidence, a reviewing court will not substitute its judgment for that of the Commission merely because other reasonable inferences might have been drawn from the evidence. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 65, 442 N.E.2d 908, 911.

Pursuant to section 19(f)(2) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.19(f)(2)), that portion of the Commission's award providing for TTD is modified, by agreement of the parties, to be for $16^3/_7$ weeks instead of $16^1/_7$ weeks. To that limited extent, the order of the circuit court of Cook County is modified. In all other respects, the order of the circuit court of Cook County confirming the order of the Commission is affirmed.

Affirmed as modified.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.