GENERAL REFRACTORIES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John Burgett, Appellee).

Third District (Industrial Commission Division)   No. 3—93—0297WC

Opinion filed January 28, 1994.

Brad E. Bleakney, of Bleakney & Troiani, of Chicago, for appellant.

Michael D. Block, of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, John Burgett, sought benefits pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) (the Act) for injuries sustained while in the employ of respondent General Refractories. Burgett began working for General Refractories in 1978 as a grinder operator. Burgett injured his back on September 16, 1987. The injury consisted of a right-sided herniated disc at L5-S1 with mild compromise of the L4-L5 neural foramen bilaterally and a bulging disc at L4-L5. Burgett's treating physician, Dr. Noel Bass,

testified that this condition was permanent and that Burgett might be a candidate for surgery.

An arbitration hearing was held on May 15, 1989. The arbitrator found that the condition was permanent and that Burgett was permanently and totally disabled. Prior to the award becoming final, the parties entered into a settlement agreement which provided in pertinent part:

> "In lieu of litigation, the parties hereby compromise and adjust any and all claims for benefits under the Workers' Compensation Act arising out of the accident of 9/16/87, and including, but not limited to, claims for the cost of first aid, medical, surgical and hospital services incurred, and claims for compensation and other benefits on account of any and all disablements, disfigurements, diseases and death, whether known or unknown, and further waive any rights they may have under Sections 19(h) and 8(a) of the Act. The total amount of $90,000.00 represents approximately 50% loss of use of Petitioner's man as a whole plus disputed claims."

Burgett subsequently requested and received a release to return to work from Dr. Bass and returned to work for General Refractories in February of 1990.

Prior to his return to work, Burgett was given a preemployment physical by Dr. Hiroshi Eguro, an orthopedic surgeon. Dr. Eguro found a healed herniated disc and released Burgett to return to work with a 45-pound lifting restriction. Upon returning to work on February 19, 1990, Burgett's duties included flipping gates, moving shuttle conveyors and crushing vats, and unloading railroad cars. Burgett would have to unload vats of bad brick, and throw the bricks, each of which weighed from 12 to 90 pounds, into a crusher. Unloading railroad cars involved using a steel bar six to seven feet long and weighing about 25 pounds. On October 30, 1990, while opening a railroad car, the bar slipped and Burgett spun sideways, struck his back against the car and fell to the ground. A witness, Michael Fossen, testified that he saw Burgett fall and that he complained of pain immediately thereafter. Burgett was taken to the emergency room at St. Joseph's Hospital. Dr. Donald Brobst, the treating company doctor, diagnosed a possible worsening of the lumbar sacral disc herniation and a thoracolumbar lumbar radiculopathy and referred Burgett to Dr. Leonard Rutkowski, a board-certified neurosurgeon. Dr. Rutkowski had treated Burgett for his September 16, 1987, injury. Initially, Dr. Rutkowski prescribed work hardening and a functional capacity exam, and released him for light duty, with a 20-pound lifting

restriction. General Refractories refused to pay for either the work hardening or functional capacity exam so neither was performed. Burgett returned to work on December 18, 1990, but was only able to work a few hours. Burgett returned to Dr. Rutkowski on December 24, 1990. Dr. Rutkowski gave him medication and took him off work. On January 3, 1991, Dr. Rutkowski performed a CT scan and a myelogram. On January 4, 1991, Dr. Rutkowski recommended surgery, which was performed on February 21, 1991. The surgery consisted of decompressing the disc at L4-L5 and removing 30% to 40% of the disc at L5-S1.

Dr. Rutkowski noted that prior to the October 30, 1990, injury, Burgett had totally normal reflexes with a hint of hamstring weakness on the right side. In contrast, after the October 30, 1990, injury, Burgett had a decreased reflex on the right side, leading to a new diagnosis of S1 radiculitis on the right. The S1 nerve was irritated acutely as demonstrated by diminishment of the right Achilles reflex, which Dr. Rutkowski found significant. Dr. Rutkowski also noted as significant the fact that the 1990 injury involved falling backwards with a twisting motion. Such twisting could exacerbate and cause a problem with the disc herniation or irritate the nerve roots. Dr. Rutkowski opined that the October 30, 1990, injury was a combination of causing a new condition and aggravating a preexisting condition, and was significant enough in and of itself to cause a herniated disc resulting in irritation of the nerve at S1 on the right side. According to Dr. Rutkowski, Burgett's difficulties with the S1 nerve as to function and irritability were a result of the October 30, 1990, accident.

A number of Burgett's co-workers testified that during the period between February 1990, when he returned to work, and the date of the accident, Burgett never complained of any back problems, nor did they notice him limping prior to the accident.

Section 19(b) hearings were held on March 6 and April 2, 1991. The arbitrator found that as a result of the October 30, 1990, accident, Burgett suffered an irritation to the S1 nerve root and an aggravation of his previously herniated disc requiring surgery; that surgery would not have been required but for this injury; and that the evidence did not establish that Burgett's prior condition was progressive or that Burgett's condition had so deteriorated that any normal activity would likely produce the complained-of condition. The arbitrator based his decision primarily on the medical deposition of Dr. Rutkowski and the fact that Burgett had been performing very heavy work since his return to work in February of 1990.

The arbitrator awarded 26⁶/₇ weeks of TTD and medical expenses. The arbitrator also awarded penalties of $1,530 pursuant to section 19(l), $3,608.61 pursuant to section 19(k), and attorney fees in the amount of $2,500 pursuant to section 16. These awards were based on the arbitrator's finding that an objective view of the evidence showed no reasonable basis to contest the claim.

On review, the Industrial Commission (Commission) found that Burgett suffered a major industrial accident on October 30, 1990, which arose out of and in the course of his employment, and that his present condition of ill-being was causally related thereto. The Commission based its finding on the medical opinion of Dr. Rutkowski and on Burgett's testimony that he could perform heavy labor prior to the accident but not thereafter. The Commission also noted the testimony of Burgett's co-workers that Burgett worked normally before October 30, 1990, and was in severe pain after the accident. With respect to General Refractories' argument regarding waiver, *res judicata*, and estoppel, the Commission ruled that those defenses went to the issue of whether Burgett's condition was the result of a new work injury or was solely the result of the natural degeneration from his 1987 work injury. The Commission adopted the opinion of Dr. Rutkowski and found that Burgett's condition was the result of both a new work injury as well as the aggravation of the preexisting condition from the 1987 work injury.

The Commission affirmed the TTD award, but reduced the medical expense award to $27,145.97 from $27,284.97. The Commission also affirmed the arbitrator's award of penalties and attorney fees, but increased the section 19(k) award to $4,130.77 and reduced the award for attorney fees to $826.15. Finally, the Commission remanded the case to the arbitrator for a determination of further TTD compensation or compensation for any permanent disability.

The circuit court confirmed the decision of the Commission in all respects.

On appeal, General Refractories first argues that the Commission erred in finding that Burgett's claim is not barred by the doctrine of *res judicata*. General Refractories also argues that the Commission erred in finding that Burgett did not waive his rights to compensation by the prior settlement agreement. Both of these arguments rest on the premise that Burgett's current condition of ill-being is the result of the worsening of his prior condition, for which he has already been compensated, rather than a new work-related injury.

Whether an injury arises out of employment and is causally connected to the present disability is a question of fact for the Commis-

sion, and its resolution of these questions will not be disturbed on appeal unless they are against the manifest weight of the evidence. (*Reliance Elevator Co. v. Industrial Comm'n* (1988), 171 Ill. App. 3d 18, 24, 524 N.E.2d 1022, 1025, citing *Johnson Outboards v. Industrial Comm'n* (1979), 77 Ill. 2d 67, 394 N.E.2d 1176.) "The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]" *Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896.

Dr. Rutkowski testified that he had seen Burgett in 1987 in connection with the previous injury, and concluded that Burgett was not then a candidate for surgery because of the lack of focal neurological findings of significance. Dr. Rutkowski testified that such findings were present in 1991 and he therefore recommended surgery. Dr. Rutkowski also testified that the irritation of the nerve root at S1 was a new injury that resulted from the October 30, 1990, accident. Dr. Rutkowski further testified that the X rays and MRI's disclosed no degenerative changes between 1987 and 1990. Based upon this and the fact that Burgett was able to do heavy work with no increase in subjective symptoms, Dr. Rutkowski concluded that Burgett's condition had not grown progressively worse after the 1987 accident.

■ Based upon Dr. Rutkowski's testimony, the testimony of Burgett's co-workers and Burgett's testimony, the Commission specifically found that Burgett's present condition is a combination of a new work injury as well as aggravation of the preexisting condition from the previous work injury. The Commission also found that Burgett's back was not so deteriorated that any normal activity was an overexertion. Reviewing the testimony of Dr. Rutkowski and the other evidence contained in the record, we cannot say that the Commission's decision was against the manifest weight of the evidence.

General Refractories next argues that the Commission erred in finding that Burgett's injury arose out of employment. General Refractories maintains that an injury does not "arise out of" employment where, because of a preexisting degenerative condition, any simple and normal activity would have caused injury. General Refractories directs our attention to the testimony of Dr. Rutkowski that a number of routine functions of everyday life would have been capable of exacerbating Burgett's preexisting degenerative condition.

Generally, an employer takes its employees as it finds them, and a preexisting condition does not bar compensation for an injury if the employment was a causative factor. (*Komatsu Dresser Co. v. Indus-*

*trial Comm'n* (1992), 235 Ill. App. 3d 779, 601 N.E.2d 1339.) There is an exception to this rule, however, where the employee's health has so deteriorated that any normal, daily activity could have caused the injury, or where the activity engaged in presents risks no greater than that to which the general public is exposed. *Caterpillar Tractor Co. v. Industrial Comm'n* (1982), 92 Ill. 2d 30, 440 N.E.2d 861.

While it is true that Dr. Rutkowski testified that there were a number of routine life activities which could have exacerbated Burgett's condition, he specifically stated that the October 30, 1990, accident was itself sufficient to produce Burgett's current condition, and opined that this accident resulted in an aggravation of the disc and a corresponding irritation of the S1 nerve root, and was the ultimate cause of Burgett's surgery. Based upon Dr. Rutkowski's testimony, the Commission specifically found that Burgett's back was not so deteriorated that any normal activity was an overextension which could have caused the injury. This finding was also based upon the fact that prior to the October 30, 1990, accident, Burgett was performing heavy manual labor with no apparent difficulty, but was unable to do so afterwards without suffering severe distress. Again, we cannot say that this finding was against the manifest weight of the evidence.

General Refractories also argues that the Commission erred in awarding fees and penalties because it had a reasonable basis for disputing Burgett's claim given that he was a candidate for back surgery prior to the October 30, 1990, accident. General Refractories also contends that its position is supported by the medical evidence.

Penalties will not be imposed where the employer reasonably could have believed that the employee was not entitled to compensation. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 9, 442 N.E.2d 861, citing *Avon Products, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 297, 412 N.E.2d 468; *Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 413 N.E.2d 390.) The standard to which the employer is held is one of objective reasonableness. *Board of Education*, 93 Ill. 2d at 9-10, 442 N.E.2d at 865.

In the present case, the overwhelming weight of the medical evidence indicates that Burgett was entitled to compensation. While there is contrary medical evidence in the form of Dr. Brobst's testimony, who opined that the injury resulted from the natural progression and deterioration of the 1987 injury, the test is not whether there is any medical evidence to support nonpayment of compensation, but whether the employer's conduct in relying on the medical opinion to contest liability is reasonable under the circumstances. (*Continental*

*Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 456 N.E.2d 847.) This is a question of fact for the Commission, and its determination will not be disturbed unless contrary to the manifest weight of the evidence. (*Continental Distributing*, 98 Ill. 2d at 415-16, 456 N.E.2d at 851.) Given the overwhelming weight of the medical testimony in favor of compensation, we cannot say that the Commission's determination that General Refractories' refusal to pay was not made in good faith was against the manifest weight of the evidence.

■ Finally, General Refractories argues that the circuit court erred in taxing it with costs on review. We agree. Our supreme court has stated that circuit courts are without authority to tax interest and costs in proceedings to review awards by the Commission. (*Board of Education v. Industrial Comm'n* (1968), 39 Ill. 2d 167, 233 N.E.2d 362.) Burgett contends that section 5—118 of the Code of Civil Procedure (735 ILCS 5/5—118 (West 1992)) provides the circuit court with discretion to award costs. The provisions of the Code of Civil Procedure and the supreme court rules are inapplicable, however, to procedures regulated by section 19 of the Act. (*Chicago Transit Authority v. Industrial Comm'n* (1992), 238 Ill. App. 3d 202, 606 N.E.2d 236; *Chambers v. Industrial Comm'n* (1985), 132 Ill. App. 3d 891, 478 N.E.2d 498.) Circuit courts have special statutory jurisdiction under section 19(f) of the Act to review decisions of the Commission, but they have only those powers conferred by statute. (*Boalbey v. Industrial Comm'n* (1977), 66 Ill. 2d 217, 362 N.E.2d 286; *Interlake Steel Corp. v. Industrial Comm'n* (1975), 60 Ill. 2d 255, 326 N.E.2d 744.) Section 19 does not provide the circuit court with authority to tax the costs of review to the respondent, and we must therefore reverse that portion of the circuit court's order.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and SLATER, JJ., concur.