JACQUELINE L. McRAE, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Venture Stores, Inc., Appellant).

Fifth District No. 5—96—0124WC

Opinion filed December 30, 1996.

RARICK, J., dissenting.

William R. Gallagher, of Law Offices of James W. Reeves, of St. Louis, Missouri, for appellant.

Timothy F. Campbell, of Godfrey, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant Jacqueline L. McRae filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1994)) for low back injuries allegedly sustained on March 21, 1991, while working for Venture Stores, Inc. (Venture). The arbitrator awarded claimant eight weeks' temporary total disability (TTD) and 25% permanent partial disability (PPD), upon finding a causal connection between claimant's condition of ill-being and a work-related accident. The Industrial Commission (Commission) reversed and vacated the arbitrator's award. The circuit court reversed the decision of the Commission and reinstated the decision of the arbitrator. The issues presented are whether the decision of the Commission is against the manifest weight of the evidence and whether the arbitrator abused his discretion in admitting uncertified medical records into evidence. For the reasons that follow, we reverse the judgment of the circuit court and reinstate the Commission's decision.

## FACTS

Claimant worked for Venture as a scanner, which required claimant to scan UPC bar codes and repeatedly lift heavy boxes of merchandise. On March 21, 1991, claimant stopped working for Venture because of severe low back pain. On March 25, 1991, claimant went to the hospital emergency room, where she was seen by Dr. R. Anthony Marrese. Dr. Marrese's report states in pertinent part: "Patient claims she has pain in her low back shooting into both hips, going down her left leg far worse than her right. She denies any accident that may have brought this on. The patient states she has had problems with her back intermittently for six years but has been severe the last six weeks." Claimant testified that she did not tell Dr. Marrese about any specific incident at work, but she did tell him that repetitive lifting and bending at work seemed to bother her.

On March 26, 1991, claimant underwent surgery for excision of a herniated disc. On April 5, 1991, claimant returned to the hospital for the removal of stitches. She reported no pain and said she was "feeling great." The hospital records from May 17, 1991, show an improvement in back pain and occasional numbness of the feet. On July 9, 1991, claimant returned to the hospital with complaints of back pain. Dr. Lin performed lumbar epidural blocks and prescribed medication to ease the pain.

On June 5, 1992, approximately 14 months after the alleged work accident, claimant returned to the hospital to see Dr. Marrese for back pain. Dr. Marrese's report states: "Patient was injured at

Venture. States she had to do lifting on a daily basis and she felt this was what resulted in her having to have back surgery. *** Repeated bending at Venture may well have caused her condition of ill being, that is[,] the ruptured disc." This is the first and only reference in any of the medical records that suggests claimant sustained an injury at work or that her condition is causally related to a work accident.

At arbitration, claimant admitted she had preexisting low back pain prior to her employment with Venture. Between January 1987 and 1989, claimant received treatment for her back and neck from chiropractor Dr. Stewart Smith. Dr. Smith's records reveal that claimant was involved in two car accidents; one in 1972, the other in 1987. Claimant also was treated for back problems by Dr. Norman Taylor approximately six months prior to beginning work for Venture. On March 5, 1990, Dr. Taylor diagnosed claimant with chronic low back syndrome, noting that she has had back problems "off and on for many years." The arbitrator admitted the records of Dr. Smith and Dr. Taylor over claimant's objections.

Claimant also testified that on March 26, 1991, she called Jan Stamper, Venture's assistant human resource manager, to inform her that she could no longer work at Venture because of the bending and lifting requirements of the job. However, claimant did not tell Stamper that she had been injured at work. Moreover, Stamper testified that claimant did not report a back injury to her and that Stamper had no notice of the claim until March 1992.

Claimant's supervisor, Joyce Haun, testified that claimant did not inform her of a work-related back injury or fill out an accident report. Claimant testified she understands the procedures for reporting work-related accidents to be that if she is doing a job and then gets hurt, she must report it as an incident or accident. To be sure, claimant filed incident reports in the past for two previous, unrelated injuries.

The arbitrator found claimant sustained an aggravation of a preexisting condition as the result of a work-related repetitive trauma. He awarded claimant eight weeks' TTD and 25% PPD. The Commission reversed and vacated the arbitrator's decision on the basis that claimant did not sustain an injury causally related to her employment. The Commission relied on the fact that claimant had a long history of back problems and that the medical evidence did not make any reference to a work-related injury until 14 months after the alleged accident. The circuit court reversed the Commission's decision and reinstated the decision of the arbitrator. The court held, "The manifest weight of the evidence in this case is embodied in the only expression of opinion relative to the issue of causation wherein

the treating surgeon said, 'Repeated bending at Venture may well have caused her condition of ill being, that is[,] the ruptured disc.' "

## ANALYSIS

### A. Manifest Weight of the Evidence

■ Whether an injury arises out of employment and is causally related to the present disability is a question of fact for the Commission, whose decision will not be reversed unless it is against the manifest weight of the evidence. *General Refractories v. Industrial Comm'n*, 255 Ill. App. 3d 925, 929-30 (1994). "The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992).

■ Employer maintains the Commission's decision is not against the manifest weight of the evidence and should not have been reversed by the circuit court. The law is clear. It is the province of the Commission to judge the credibility of witnesses, determine what weight to give testimony, and resolve conflicting evidence, including medical testimony and evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 263 Ill. App. 3d 478, 485 (1994). A reviewing court must not substitute its judgment for that of the Commission where the Commission's decision is supported by the evidence. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 119 (1990); *Wantroba v. Industrial Comm'n*, 248 Ill. App. 3d 978, 984 (1993). In the instant case, the issue is whether the evidence supports an inference that claimant did not sustain an accidental injury causally related to her work that aggravated or accelerated her preexisting condition. Aggravation or acceleration of a preexisting condition is a question of fact for the Commission. *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 331 (1994).

■ After careful review of the record, we cannot say the Commission's decision is against the manifest weight of the evidence. The only medical evidence of causation is the report of Dr. Marrese, which states: "Patient injured at Venture. States she had to do lifting on a daily basis and she felt this was what resulted in her having to have back surgery. \*\*\* *Repeated bending at Venture may well have caused her condition of ill being, that is[,] the ruptured disc.*" (Emphasis added.) The Commission gave little weight to this statement primarily because it was made 14 months after claimant's alleged accident. Prior to then, none of claimant's medical records, including the initial

reports by Dr. Marrese, referred to a work-related injury or incident. Moreover, Dr. Marrese was equivocal with regard to causation, stating only that repeated bending at Venture "may well have caused" the ruptured disc. He could not say repeated bending at work did in fact cause the injury, nor was there other evidence, aside from claimant's own testimony, that supported a causal connection.

At arbitration, claimant testified that her preexisting back condition was aggravated by repeated bending and lifting at work. She also testified that she originally told Dr. Marrese that repetitive lifting at work bothered her. However, claimant admitted she did not tell Dr. Marrese of a specific accident or trauma at work. Moreover, claimant did not report the alleged incident to her employer, even though she knew the procedure for filling out an accident report. At best, she told the human resource manager that she could no longer work at Venture because of the bending and lifting requirements of her job.

Nonetheless, claimant contends that only one reasonable inference could be drawn based on Dr. Marrese's report and claimant's own testimony: that the repetitive physical stress at work caused or aggravated claimant's herniated disc. Claimant relies on the fact she was asymptomatic for one year and was not diagnosed with a herniated disc until after the occurrence on March 21, 1991. She also claims that Dr. Marrese's statement made 14 months after her alleged injury is the only expression of opinion relative to the issue of causation, and there is no other opinion evidence to contradict this statement. We disagree.

Although there is no direct testimony in opposition to Dr. Marrese's statement, the Commission was not required to accept this equivocal and ambiguous opinion as undeniable truth that claimant's condition was indeed caused by repeated bending and lifting at work. Moreover, the Commission was at liberty to discount the credibility of this statement because it was made 14 months after claimant's alleged injury. This is not to say the Commission may arbitrarily reject uncontradicted testimony of witnesses and medical opinions. *Sorenson v. Industrial Comm'n*, 281 Ill. App. 3d 373, 384 (1996); see *In re Glenville*, 139 Ill. 2d 242, 251 (1990). However, the rule is not absolute where conflicting inferences may reasonably be drawn from other evidence in the record.

As stated above, it is the province of the Commission to assess claimant's credibility and to determine the weight to give Dr. Marrese's report. It is also the task of the Commission to judge all the evidence of causation and draw reasonable inferences therefrom. Even

if several medical experts had concurred with Dr. Marrese's opinion that claimant's work may well have caused her present condition, it is still within the domain of the Commission to weigh the credibility of the evidence in deciding the issue of causation. See *Glenville*, 139 Ill. 2d at 251.

In the instant case, Dr. Marrese opined that claimant's work may well have caused claimant's condition of ill-being. Implicit in this statement is that claimant's work may well *not* have caused the condition. As a reviewing court, the circuit court was not licensed to reject reasonable inferences of the Commission merely because it could or would have drawn different inferences from the facts. *Archer Daniels Midland Co.*, 138 Ill. 2d at 119. The record shows that the Commission's finding is not against the manifest weight of the evidence. Accordingly, we reverse the judgment of the circuit court and reinstate the decision of the Commission.


## B. Admissibility of Medical Records

Claimant also argues the arbitrator abused his discretion in admitting into evidence uncertified medical records of Dr. Smith and Dr. Taylor.

■ Claimant did not raise this argument before the circuit court, despite the fact she was appealing from the Commission's decision. Thus, she has waived it on appeal. *General Electric Co. v. Industrial Comm'n*, 144 Ill. App. 3d 1003, 1015 (1986). In addition, we find that the uncertified records did not prejudice claimant or affect the outcome of the case and, therefore, any error was harmless. *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 879 (1990).

Claimant's testimony was substantially similar and cumulative to the facts contained in the records of Dr. Smith and Dr. Taylor. Claimant admitted she received treatment with Dr. Smith for back and neck problems. She also acknowledged being involved in at least one car accident. Further, claimant testified that she had prior back problems for years, which was consistent with Dr. Taylor's diagnosis of chronic low back syndrome. Accordingly, any error in the admission of the uncertified records of Dr. Smith and Dr. Taylor was harmless.


## CONCLUSION

For the reasons stated, the judgment of the circuit court is re-

versed, and the decision of the Commission, denying benefits, is reinstated.

Judgment reversed; award vacated; Commission's decision of April 6, 1995, reinstated.

McCULLOUGH, P.J., and HOLDRIDGE, J., concur.

JUSTICE RARICK, dissenting:

Because I do not find the statement of claimant's doctor to be ambiguous or equivocal, I must dissent. We are faced here with a case of aggravation of a preexisting condition. Clearly, the repetitive heavy lifting and bending claimant performed in her job aggravated her low back condition. Prior to working for employer, claimant had experienced low back symptoms over the years and had been diagnosed with chronic low back syndrome. There were, however, no medical records or other probative evidence suggesting a prior herniated disc. Claimant also testified she felt "okay" before starting her new job. After several months on the job, however, the low back pain became excruciating, radiating into her lower legs. Upon admission to the hospital on March 25, 1991, claimant gave a history of worsening low back pain. During this same hospitalization, Dr. Marrese recommended that claimant change occupations. How much more proof of causal connection is required? Employer presented no medical evidence to the contrary, that claimant's current condition was not causally related to her employment, except what claimant already admitted—she experienced some back problems prior to her employment with employer. Simply because the Commission refuses to acknowledge Dr. Marrese's finding of causal connection both at the time of claimant's hospitalization in March 1991 and 14 months later does not justify reversal of the award of benefits. I therefore would affirm the judgment of the circuit court.

COLWELL, J., joins in this dissent.