WHEELAN FUNERAL HOME, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Mary C. Wiggins, Appellee).

Third District   No. 3—90—0369WC

Opinion filed February 19, 1991.

Linda E. Frischmeyer, of Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., of Rock Island, for appellant.

Harrison H. Kavensky, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Mary C. Wiggins, filed an application for adjustment of claim with the Industrial Commission (Commission) to recover for the death of William B. Wiggins, her husband, who died of a heart attack and who had been employed by the respondent, Wheelan Funeral Home. An arbitrator awarded compensation, the Commission affirmed that decision, and the circuit court of Rock Island County confirmed the Commission's decision. Respondent appeals, contending that the Commission's finding that decedent's death arose out of and in the course of employment is against the manifest weight of the evidence, and that certain hearsay evidence was improperly admitted into evidence and considered by the Commission.

The relevant facts are as follows. The deceased, age 54, was employed by respondent for over 20 years as a funeral director. The deceased's job duties included picking up bodies and bringing them into the funeral home; lifting, embalming and applying cosmetics to the bodies; setting up and remaining on call for visitation; and going to the church and cemetery during funeral services. The deceased had consistently worked overtime in the months prior to his death, and had worked 27 hours of overtime in the pay period preceding his death.

The day before his death, the deceased worked at a visitation service until approximately 9:30 p.m. The deceased also remained on call that evening and had to pick up and embalm a body.

The deceased directed a funeral service on the morning of his death, October 18, 1984. At approximately 4 p.m., the deceased was sitting in the funeral home at a desk reading the newspaper when

he made a gasping noise and dropped over at the desk. He was pronounced dead of a massive myocardial infarction shortly after arriving at the hospital.

According to petitioner's testimony, she picked up her husband following the funeral service, and he tried to explain to her why he was so late. Petitioner testified, over objection, as to the conversations she had with the deceased and that the deceased told her that it was a "real long funeral" and "unusually large." The deceased "had to carry the casket, and it was pouring down rain at the cemetery," and "there was a larger family than usual, so he had to stand out in the rain longer, because he had to open the cars for the family." Petitioner stated that "it was an unusual day" and that "normally they don't have that number of people at the funeral."

Petitioner further testified that her husband was "really wet," and that "his raincoat, suit, shirt, undershirt, shoes and socks were soaked, all the way through." Petitioner had the car running and the heater turned on because she knew "he would be so cold" and that "it was just a horrible day." Petitioner then took him home to get some clean clothes because he had another funeral that afternoon. Petitioner gathered dry clothes for the deceased, including a fresh suit, underwear, shoes and socks. In a statement given shortly after her husband's death, petitioner stated that the deceased was not under any undue stress and that his work schedule was normal. Petitioner also stated that the deceased did not complain to her about any chest pains when she picked him up after the funeral service.

Harold A. Temple, a co-worker at the funeral home, testified that the deceased directed a "large funeral service" on the morning of his death. Temple further testified, over objection, that the deceased stated that he had a problem with parking at the church because a group of local priests were having a meeting and had disregarded the parking signs. Therefore, when the funeral procession arrived, it was necessary to block in the priests' cars. After the church service started, the deceased had to get the keys for the different family cars to move them so that the priests could get their cars out. Temple further testified that the deceased was "very upset," and that he was "soaking wet."

J. Allan Gahagan, another co-worker, testified that the deceased was "worked up" and appeared tired after returning from lunch at about 1:30 p.m. Gahagan testified without objection that the deceased related the events of the morning's funeral, including his dismay over finding that a group of priests were already at the

church and had parked their cars in the area where the funeral cars were normally parked, and that the deceased had to retrieve the keys and move the funeral cars so that the priests could leave. Gahagan further testified that the deceased told him that it was raining very hard during this time and that his clothes became soaked. The deceased went home and changed his clothes before returning to work the afternoon shift. As we have noted, none of Gahagan's testimony was objected to at the hearing.

Petitioner's friend, Bethel Vincent, took the fresh clothes out to the car where the deceased was waiting. Vincent testified, over objection, that when she took the dry clothes out to him, the deceased stated that he "had a long funeral, a long, hard funeral," and that he was "wet and tired."

The record indicates that the deceased was 5 feet 11 inches tall and weighed between 275 and 285 pounds. In 1981, Dr. William J. McCormick, the deceased's treating cardiologist, diagnosed the deceased as having arteriosclerotic coronary artery disease with recent bouts of unstable angina, exogenous obesity, borderline diabetes mellitus, and anemia. In September 1982, the deceased had increased chest pain, and an electrocardiogram revealed evidence of additional myocardial infarction that had not been present on the earlier tracings. In January 1984, the deceased's angina was again increasing, which resulted in coronary by-pass surgery in February 1984. The deceased returned to work on April 30, 1984. The last time Dr. McCormick examined the deceased was on September 25, 1984. Dr. McCormick stated that the deceased's blood pressure was relatively well controlled, and that the deceased indicated that he was dieting, and had no specific complaints.

Dr. McCormick was presented with a hypothetical question regarding the deceased's overall work activities following his surgery, including the events of the night before and the day of his death. Dr. McCormick opined that while the deceased had severe underlying cardiac problems, there was a reasonable likelihood that his work situation could have been a contributing factor to the acute occurrence which led to his death.

Dr. Richard Cooper also testified as an expert on behalf of petitioner. After reviewing the deceased's medical records, Dr. Cooper opined that the events of that morning centering around his work at the funeral home remain a possible cause of the sudden death which occurred in the hours after he returned to the funeral home.

Dr. Frank J. Forlini testified as an expert on behalf of respondent. He opined that the time relationship between the stress and

the death of the deceased was too long to establish a causal connection.

On March 15, 1988, the arbitrator found that based upon the facts and the testimony of Drs. McCormick and Cooper, the deceased's work activities were at least a precipitating or contributing cause that led to his death. The arbitrator awarded petitioner the weekly sum of $287.79 to be paid until the sum of $250,000 has been paid out, or 20 years have passed, whichever is greater. The arbitrator also awarded funeral expenses in the amount of $1,750. On September 14, 1989, the Commission affirmed the arbitrator's decision.

■ Initially, we note that whether an injury arises out of and in the course of employment is a question of fact. (*Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327.) It is the function of the Commission to determine the facts and draw reasonable inferences from competent evidence. (*City of Chicago v. Industrial Comm'n* (1970), 45 Ill. 2d 350, 259 N.E.2d 5.) Further, a reviewing court will not disturb the Commission's findings unless they are contrary to the manifest weight of the evidence. *Illinois Valley Irrigation, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 234, 362 N.E.2d 339.

■ Generally, even when an employee suffers from heart disease, if the heart attack which brings on disability or death is work related, the employee may recover workers' compensation. (*Associates Corp. of North America v. Industrial Comm'n* (1988), 167 Ill. App. 3d 988, 522 N.E.2d 102.) It is well established that if there is work-related stress, either physical or emotional, that aggravates the disease so as to cause the heart attack, then there is an accidental injury or death arising out of and during the course of the employment. (*Associates Corp. v. Industrial Comm'n*, citing *City of Des Plaines v. Industrial Comm'n* (1983), 95 Ill. 2d 83, 88-89, 447 N.E.2d 307, 309.) Further, while the claimant must prove that some act of employment was a causative factor, the act need not be the sole, or even the principal, causative factor. (*Northern Illinois Gas Co. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 48, 498 N.E.2d 327.) In addition, a preexisting heart condition does not preclude the Commission's finding that the heart attack is compensable. *Sears, Roebuck & Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 59, 402 N.E.2d 231.

■ While it is undisputed in this case that the deceased suffered from coronary disease, we find that sufficient evidence existed in the testimony of Drs. McCormick and Cooper to support

the Commission's conclusion that his death arose out of and during the course of employment. The deceased worked at a visitation service the day before his death, and during that night, he had to pick up and embalm a body. More particularly, the events occurring on the morning of his death, including working at the large funeral service, moving the funeral cars during that service, and the fact that the deceased's clothing became wet and necessitated a complete change before he returned to work in the afternoon, indicate the existence of significant work-related stress.

■ Respondent contends that the doctors improperly relied upon the hearsay testimony, objected to at the hearing, of petitioner, Temple, and Vincent in formulating their conclusion that the deceased could have died as a result of the events occurring on the morning of his death. We find, however, that the testimony of Gahagan, to which there was no objection at the hearing, provides sufficient and undisputed details of those events. Accordingly, we need not reach the issue of whether improper hearsay was admitted, nor the merits of respondent's other contention that petitioner's testimony was admitted in violation of the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201).

We hold that the finding of the Commission that the deceased's death arose out of and in the course of his employment thus entitling petitioner to an award is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Rock Island County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH and LEWIS, JJ., concur.