THE CITY OF SPRINGFIELD, ILLINOIS, POLICE DEPARTMENT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*, (Glen Wessel, Appellee).

Fourth District   No. 4—00—0562WC

Opinion filed February 25, 2002.

Gary A. Brown and Julie B. Cox, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Theodore J. Harvatin, of Harvatin & Lanterman, P.C., of Springfield, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:
Claimant, Glen Wessel, sought benefits pursuant to the Workers'

Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)) for injuries arising out of and in the course of his employment as a police officer/juvenile detective with the City of Springfield (employer). A hearing was held before an arbitrator of the Illinois Industrial Commission (Commission). The arbitrator denied the claim, finding that claimant had failed to prove that he sustained accidental injuries arising out of and in the course of his employment. On appeal, the Commission reversed the decision of the arbitrator and found that claimant had proven that he sustained accidental injuries arising out of and in the course of his employment and that a causal connection existed between claimant's employment and his current condition of ill-being (acute hypertension). The Commission awarded temporary total disability (TTD) benefits for a period of $22^5/_7$ weeks. The Commission also found that the claimant's condition had stabilized and he was entitled to no further TTD benefits. The Commission also noted that while the claimant had proven that he could no longer work in law enforcement, he had failed to show that he was not employable elsewhere, had presented no evidence of a job search and made no request for vocational rehabilitation. The Commission remanded the cause to the arbitrator for a finding as to permanency. The employer sought review from the circuit court of Sangamon County, which confirmed the order of the Commission. The employer then sought review in this court, taking issue with the Commission's finding that the claimant sustained injuries arising out of and in the course of his employment. We affirm.

The claimant, a 45-year-old juvenile detective, began working as a police officer for the employer in June 1982. He was generally assigned to a high crime area where his duties included handling murders and suicides. In October 1993, he was transferred to the juvenile division. His duties as a juvenile detective included investigating criminal activities by juvenile offenders, interviewing suspects and victims of crime and making arrests, including drug arrests at crack houses. He investigated gang activity and his life had been threatened many times.

The claimant was diagnosed with hypertension in the early 1990s. In late 1995 and early 1996, the claimant began having symptoms of headaches, severe pressure in his eyes, and his forearms throbbed and were in pain. He was placed on a series of medications in an attempt to control his hypertension, but his condition worsened. During the last months of 1997, the headaches intensified and he lost sleep. The claimant missed 80 days of work during 1997 as a result of the headaches. When the claimant was not working, the headaches and eye pressure tended to subside. When he was off work for an extended pe-

riod, the symptoms virtually vanished. The claimant testified that since his last day of work on February 3, 1998, he no longer suffers headaches and eye pressure, and his medication is controlling his hypertension.

The claimant began treating with Dr. Thomas Wiss in March 1992. Dr. Wiss initially diagnosed acute hypertension. Dr. Wiss' records note that on November 5, 1996, the claimant complained of an intense headache and stated that he felt as if "his eyes were going to explode." Dr. Wiss noted increased blood pressure. The claimant continued to follow up treatment for hypertension. In a report issued July 14, 1998, Dr. Wiss wrote that he had been treating the claimant for acute hypertension since April 1996. Since that time, the claimant's hypertension had become increasingly more difficult to control. Dr. Wiss observed that "[o]ver these last two years it was noted that during times of stress at work or eventually indeed any time at work his blood pressure would be essentially uncontrollable with high doses of two or three medicines at a time. Also it was then noted that during vacations or times away from work his blood pressure was easily controllable indeed became occasionally too low on the same medicines." Dr. Wiss also noted that as a result of these prolonged episodes of hypertension, the claimant began to show some signs of organ damage, including retinopathy, a thickening of the arteries in the back of the eye, and early left ventricular hypertrophy, a thickening of the heart muscle wall. Dr. Wiss opined that the claimant's hypertension had been exacerbated by his stressful job duties and that his hypertension was uncontrollable in his workplace. He further opined that the claimant was disabled from his job and that continued work in law enforcement would be detrimental to the claimant's health.

In August 1998, Dr. Merry Downer examined the claimant and reviewed Dr. Wiss' records at the request of the employer. Dr. Downer noted that the claimant had a history of poorly controlled hypertension for the previous two to three years. He also noted that the claimant's blood pressure had been difficult to control during his employment as a police officer despite trying several different medications. He further noted that the claimant's blood pressure was controllable during vacations and leaves of absences from work. Dr. Downer opined that hypertension is a very complex disease with many physiological and psychological contributors. Dr. Downer agreed that the claimant exhibited end organ damage and that stringent control of his blood pressure was necessary. Dr. Downer also agreed that it would be beneficial for the claimant to be employed in a less stressful environment.

Additional evidence established that juvenile officer work is one of

the most stressful jobs in police work due to volume, recidivism, frustration and an overriding sense of futility. The record also established that the claimant was conscientious and did his job well.

Based upon the record as a whole, particularly the medical evidence of both Dr. Wiss and Dr. Downer, the Commission found that the claimant had sustained his burden of showing that he sustained accidental injuries arising out of and in the course of his employment and awarded TTD benefits through July 14, 1998, the date of Dr. Downer's examination. The Commission characterized the claimant's condition as a "mental-physical" case where the claimant's preexisting condition (hypertension) was aggravated by work-related stress. The Commission found that Dr. Downer's diagnosis established that claimant had reached maximum medical improvement, and thus, no further TTD benefits were appropriate. The Commission then remanded the matter to the arbitrator for a determination as to permanency. The circuit court confirmed the decision of the Commission and the employer appealed to this court.

On appeal, the employer maintains that the claimant is attempting to recover for psychological injuries and must therefore establish eligibility for compensation under either the "mental-mental" theory or the "physical-mental" theory. According to the employer, the claimant may recover if he can show that his psychological injuries were caused by "a sudden, severe emotional shock traceable to a definite time, place and cause which causes psychological injury or harm *** though no physical trauma or injury was sustained." *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976). In the alternative, the employer suggests that the claimant also failed to establish eligibility for compensation under a "physical-mental" theory, *i.e.*, a mental injury caused by a physical trauma. See *City of Springfield v. Industrial Comm'n*, 291 Ill. App. 3d 734 (1997). Since the claimant cannot trace his injuries to a definite time, place and cause or to a specific instance of physical trauma, the employer maintains it was error for the Commission to award compensation.

While the employer is correct in stating how an employee may prove eligibility for compensation for psychological injuries, it has misconstrued the nature of the claimant's injuries. Claimant is not seeking compensation for psychological injuries. Hypertension is a physical condition. As Dr. Downer noted, hypertension may have some psychological causes, but it is nonetheless a physical condition which manifests physical symptoms such as headaches and organ damage. Thus, the analytical framework of the "mental-mental" or "physical-mental" is of no import in the instant matter.

In the instant matter, the Commission likened the claimant's

condition to that of the claimant in *City of Waukegan*, which it characterized as a "mental-physical" trauma case. As in *City of Waukegan*, the Commission here found that mental trauma in the form of work-related stress caused a physical manifestation of injury (the aggravation of the claimant's preexisting physical condition of hypertension). We agree with the Commission's characterization.

■ Whether an injury arises out of and in the course of employment is a question of fact. *Wheelan Funeral Home v. Industrial Comm'n*, 208 Ill. App. 3d 832, 836 (1991). It is the function of the Commission to determine the facts, judge the credibility of the witnesses, and draw reasonable inferences from competent evidence. *Ingersoll Milling Machine Co. v. Industrial Comm'n*, 253 Ill. App. 3d 462, 467 (1993); *Wheelan*, 208 Ill. App. 3d at 836; *Marathon Oil Co. v. Industrial Comm'n*, 203 Ill. App. 3d 809, 816 (1990). It is also the Commission's province to weigh and resolve conflicts in medical evidence. *Ingersoll*, 253 Ill. App. 3d at 467. We, as a reviewing court, will not disturb the findings of the Commission unless such findings are contrary to the manifest weight of the evidence. *Ingersoll*, 253 Ill. App. 3d at 467; *Wheelan*, 208 Ill. App. 3d at 836. Here, we cannot say in this instance the findings of the Commission are against the manifest weight of the evidence.

■ It is well established that an employer takes its employees as it finds them (*County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 17 (1977)) and that, even if an employee suffers from a preexisting condition, such as heart disease or hypertension, if the condition which brings on disability is work-related, the employee may recover workers' compensation. *Wheelan*, 208 Ill. App. 3d at 836; *Associates Corp. of North America v. Industrial Comm'n*, 167 Ill. App. 3d 988, 996 (1988). Likewise, if there is work-related stress, either physical or emotional, that aggravates the disease so as to cause physical disability, then there is an accidental injury arising out of and in the course of the employment. *City of Waukegan v. Industrial Comm'n*, 298 Ill. App. 3d 1086, 1089 (1998); *Wheelan*, 208 Ill. App. 3d at 836; *Associates*, 167 Ill. App. 3d at 996. While the claimant must prove that some act of employment was a causative factor, the act need not be the sole, or even the principal, causative factor. *City of Waukegan*, 298 Ill. App. 3d at 1089: *Ingersoll*, 253 Ill. App. 3d at 469; *Wheelan*, 208 Ill. App. 3d at 836.

■ Here, the medical evidence is uncontroverted that the claimant suffered from a preexisting physical condition of hypertension. It is also uncontroverted that the claimant's job-related stress aggravated that preexisting condition to the point where the claimant could no longer engage in police work without endangering his health. Given

the overwhelming medical evidence, we cannot say that the Commission erred in finding a direct connection between the claimant's work-related stress and his uncontrollable hypertension.

We also agree with the Commission's observation that the claimant's condition has stabilized and he is no longer entitled to TTD benefits. His eligibility for an award of permanency is a matter yet to be determined.

For the foregoing reasons, the judgment of the circuit court of Sangamon County confirming the decision of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, O'MALLEY, and RARICK, JJ., concur.